No. 25-2499

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

United States of America, ex rel. JOHN HENDRIX, Relator,

*Plaintiff - Appellee*,

v.

J-M MANUFACTURING COMPANY, INC., DBA J-M Eagle,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of California,
No. 5:06-cv-00055-GW-MAR

## RECORD EXCERPTS
### Volume I of VI

DAVID BERNICK
ELIZABETH LARSEN
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004

PAUL CHAN
SHOSHANA E. BANNETT
BIRD, MARELLA, BOXER
LINCENBERG & RHOW, PC
1875 Century Park, E 23rd Floor
Los Angeles, CA 90067

PAUL D. CLEMENT
 *Counsel of Record*
C. HARKER RHODES IV
NICHOLAS A. AQUART
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Defendant-Appellant*

August 29, 2025

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
# [FOR PUBLIC VIEW]
### CIVIL MINUTES - GENERAL

| Case No. | EDCV 06-55-GW-PJWx | Date | March 13, 2025 |
|---|---|---|---|
| Title | *United States of America, et al. v. J-M Manufacturing Company, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

None Present                              None Present

**PROCEEDINGS:    IN CHAMBERS - FINAL RULING ON RELATOR'S PETITION FOR ATTORNEY FEES AND COSTS [3065]**

Attached hereto is the Court's Final Ruling on Petition for Attorney Fees and Costs [3065].  The Court GRANTS the Motion and orders Defendant J-M Manufacturing Company, Inc. to pay Relator $38,316,038 in attorney fees and costs under the applicable state false claims acts.

Initials of Preparer          JG          :

**ER2**

(3 of 78), Page 3 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 3 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 2 of 73   Page ID
#:161836

*__United States et al. v. J-M Manufacturing Company, Inc.__*; Case No. 5:06-cv-00055-GW-(PJWx); Final Ruling on Relator's Petition for Attorney Fees and Costs (**Under Seal**)[1]

       Before the Court is Relator John Hendrix's Petition for Attorney Fees and Costs (the "Fees Petition"). *See* Fees Petition, Docket No. 3065. The Court has carefully considered an extraordinary amount of material in this matter,[2] in addition to the oral argument presented at

---

[1] This tentative ruling is being distributed to the parties under seal because it references materials submitted by the parties under seal. At the forthcoming scheduling conference on March 13, 2025, the Court will discuss with the parties a plan for unsealing the final ruling.

[2] The Court has directly considered the following material. The abbreviations defined here will be used throughout this ruling.

- Relator's Petition for Attorney Fees and Costs ("Fees Petition"), Docket No. 3065 (under seal).
- J-M's Motion to Strike the Fees Petition, Docket No. 3070.
- Relator's Opposition to J-M's Motion to Strike, Docket No. 3073.
- J-M's Reply in Support of its Motion to Strike, Docket No. 3076.
- Order Denying J-M's Motion to Strike ("MTS Order"), Docket No. 3085 (under seal), 3102 (redacted).
- Relator's Motion for Reconsideration, Docket No. 3175.
- J-M's Opposition to Relator's Motion for Reconsideration, Docket No. 3181.
- Order Granting Relator's Motion for Reconsideration, Docket Nos. 3199 (under seal), 3216 (redacted).
- J-M's Consent to the Appointment of Special Master, Docket No. 3189.
- Relator's Consent to the Appointment of Special Master, Docket No. 3188.
- Order Appointing Special Master ("Appointment Order"), Docket No. 3198.
- Special Master's Report & Recommendation on Fees ("Fees R&R"), Docket No. 3238 (under seal).
- Special Master's Report & Recommendation on Costs ("Costs R&R"), Docket No. 3247 (under seal).
- Relator's Supplemental Petition for Fees-on-Fees ("Fees Supp."), Docket No. 3234 (manually filed).
- J-M's Opposition to Relator's Fees Petition Supp. ("Fees Supp. Opp."), Docket No. 3242 (manually filed).
- Relator's Reply in Support of His Fees Petition Supp. ("Fees Supp. Reply"), Docket No. 3251 (under seal).
- Relator's Stage One Opening Brief ("Relator Stage One Op. Br."), Docket No. 3170.
- J-M's Stage One Opening Brief, Docket No. 3171 ("J-M Stage One Op. Br.") (manually filed).
- Relator's Stage One Response Brief ("Relator Stage One Resp. Br."), Docket No. 3182 (manually filed).
- J-M's Stage One Response Brief ("J-M Stage One Resp. Br."), Docket No. 3181.
- Relator's Stage One Supplemental Brief ("Relator Stage One Supp. Br."), Docket No. 3211.
- J-M's Stage One Supplemental Brief ("J-M Stage One Supp. Br."), Docket No. 3210.
- Order on Stage One of the Fees Petition, Docket No. 3215 (under seal), 3224 (redacted).
- Relator's Stage Two Opening Brief ("Relator Stage Two Op. Br."), Docket No. 3243 (manually filed).
- J-M's Stage Two Opening Brief ("J-M Stage Two Op. Br."), Docket No. 3244 (manually filed).
- Relator's Stage Two Response Brief ("Relator Stage Two Resp. Br."), Docket No. 3248 (manually filed).
- J-M's Stage Two Response Brief ("J-M Stage Two Resp. Br."), Docket No. 3249 (manually filed).
- Relator's Stage Three Opening Brief ("Relator Stage Three Op. Br."), Docket No. 3222.
- J-M's Stage Three Opening Brief ("J-M Stage Three Op. Br."), Docket No. 3223.
- Relator's Stage Three Response Brief ("Relator Stage Three Resp. Br."), Docket No. 3225.
- J-M's Stage Three Response Brief ("J-M Stage Three Resp. Br."), Docket No. 3226.
- Relator's Opening Brief Regarding Costs ("Relator Costs Op. Br."), Docket No. 3257 (manually filed).
- J-M's Opening Brief Regarding Costs ("J-M Costs Op. Br."), Docket No. 3258 (manually filed).
- Relator's Response Brief Regarding Costs ("Relator Costs Resp. Br."), Docket No. 3261 (manually filed).
- J-M's Response Brief Regarding Costs ("J-M Costs Resp. Br."), Docket No. 3260 (manually filed).
- Relator's Supplemental Brief on Stage Three Issues, Docket No. 3275.

1

(4 of 78), Page 4 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 4 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 3 of 73   Page ID
#:161837

nineteen hearings and conferences.[3]  In this fees litigation, the Court has been asked to determine an appropriate fee award in a long-running and particularly litigious *qui tam*/False Claims Act ("FCA") case – the interim outcome of which is decidedly mixed and the remaining case still ongoing.  For all the reasons explained herein, the Court **GRANTS** the Motion and orders Defendant J-M Manufacturing Company, Inc. to pay Relator $38,316,038 in attorney fees and costs under the applicable state false claims acts.

## I.   <u>Background</u>

Just over nineteen years ago, on January 17, 2006, Relator John Hendrix ("Relator") brought this action against Defendant J-M Manufacturing Company, Inc. ("J-M") on behalf of

---

In reviewing the parties' various objections to the Special Master's reports and recommendation, the Court has also considered the following materials directly filed before the Special Master.

- Relator's Stage Two Opening Brief, Docket No. 3208
- J-M's Stage Two Opening Brief, Docket No. 3209 (manually filed).
- Declaration of Dr. Colleen Loughlin, Docket No. 3209 (manually filed).
- Supporting Spreadsheet of Dr. Colleen Loughlin, Docket No. 3209 (manually filed before Special Master).
- Relator's Stage Two Response Brief, Docket No. 3220 (manually filed).
- J-M's Stage Two Response Brief, Docket No. 3221 (manually filed).
- Relator's Stage Two Opening Supplemental Brief on Costs, Docket No. 3231 (manually filed).
- J-M's Stage Two Opening Supplemental Brief on Costs, Docket No. 3232 (manually filed).
- Relator's Stage Two Responsive Supplemental Brief on Costs, Docket No. 3239 (manually filed).
- J-M's Stage Two Responsive Supplemental Brief on Costs, Docket No. 3240 (manually filed).

[3] In total, nineteen hearings/status conferences were held before the Court on this matter, plus additional ones before the Special Master.

- Transcript of April 4, 2025 Status Conference, Docket No. 3071.
- Transcript of June 20, 204 Hearing, Docket No. 3105.
- Minutes of June 24, 2024 Hearing, Docket No. 3084.
- Transcript of August 1, 2024 Status Conference, Docket No. 3107.
- Minutes of August 8, 2024 Status Conference, Docket No. 3098.
- Minutes of August 13, 2024 Status Conference, Docket No. 3101.
- Transcript of August 19, 2024 Hearing, Docket No. 3108.
- Transcript of August 22, 2024 Status Conference, Docket No. 3112.
- Transcript of August 26, 2024 Status Conference, Docket No. 3124.
- Transcript of September 30, 2024 Status Conference, Docket No. 3236.
- Transcript of October 15, 2024 Status Conference, Docket No. 3144 (under seal).
- Transcript of October 28, 2024 Status Conference, Docket No. 3178 (under seal).
- Minutes of October 31, 2024 Status Conference, Docket No. 3160.
- Transcript of November 7, 2024 Status Conference, Docket No. 3176 (under seal).
- Transcript of November 21, 2024 Hearing, Docket No. 3217 (under seal).
- Transcript of November 25, 2024 Hearing, Docket No. 3206 (under seal).
- Transcript of December 9, 2024 Hearting, Docket No. 3229 (under seal).
- Transcript of February 24, 2025 Hearing, Docket No. 3283 (under seal).
- Transcript of March 3, 2025 Hearing, Docket No. 3291 (under seal).

(5 of 78), Page 5 of 78        Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 5 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 4 of 73    Page ID
#:161838

over 140 federal, state, and local governmental entities (collectively, "Plaintiffs").[4] *See* Complaint, Docket No. 1. The substantive background of this case has been set forth in many previous orders/decisions. *See, e.g.*, *United States et al. v. J-M Mfg. Co., Inc.*, No. 5:06-cv-00055-GW-(PJWx), 2020 WL 4196880, at *1 (C.D. Cal. June 6, 2020), *aff'd sub nom. Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*, 76 F.4th 1164 (9th Cir. 2023). For convenience, the Court will delineate here the general background of this case and add information germane to the instant Fees Petition.

### A. The Litigation

#### 1. Allegations

Plaintiffs allege that J-M falsely represented its PVC pipe as having met certain industry standards which the pipe – as the jury later found – did not meet. In October 2008, a First Amended Complaint ("FAC") was filed under seal which added an additional defendant, Formosa Plastics Corporation, U.S.A. ("Formosa") (together with J-M, "Defendants").[5] *See* FAC, Docket No. 41. In February 2010, the pleadings were unsealed and the FAC was ordered to be served upon the Defendants after the United States declined to intervene under the federal False Claims Act, 31 U.S.C. § 3730(b). *See* Docket No. 105. Myriad county and city governmental entities filed notices of intervention (*see, e.g.*, Docket Nos. 58-78, 81-85, 87-88, 90-94, 106-17, 203), a much smaller number declined to intervene (*see, e.g.*, Docket No. 80), but the vast majority of county and city governmental entities failed to respond after receiving notice of this *qui tam* action.

#### 2. Exemplar Plaintiffs

About two years after the pleadings were unsealed, the Court ordered that the trial would initially be bifurcated into two proceedings. The first phase, (the "Phase One" Trial), was limited to determining liability under the relevant state FCA statues – *i.e.*, the elements of falsity, materiality, and scienter – as to the claims of five exemplar plaintiffs.[6] *See J-M Mfg Co.*, 2020

---

[4] By the filing of the Fifth Amended Complaint on December 27, 2011, the number had grown to over 180. *See* Docket No. 568-14, Ex. 1.

[5] It was alleged that "[f]rom its inception in 1982 until at least November 1, 2005, J-M was a wholly-owned subsidiary of . . . Formosa." FAC ¶ 10.

[6] Although the Phase One trial dealt with only the five Exemplar Plaintiffs, the elements for determining liability (*i.e.*, whether J-M violated each respective jurisdiction's FCA statute) are the same under all of the relevant federal and state FCA statutes. *See Hendrix ex rel. United States*, 76 F.4th at 1169 ("The courts in those states treat federal FCA cases as precedential because their statutes are modeled after the federal law.").

(6 of 78), Page 6 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 6 of 78
Case 5:06-cv-00055-GW-MAR     Document 3310     Filed 03/13/25     Page 5 of 73     Page ID
#:161839

WL 4196880, at *1. For the Phase One trial, Plaintiffs selected five entities from California, Nevada, and Virginia to serve as exemplar plaintiffs (the "Exemplar Plaintiffs"). The five Exemplar Plaintiffs are: (1) Calleguas Municipal Water District in California; (2) the City of Norfolk, Virginia; (3) the City of Reno, Nevada; (4) Palmdale Water District in California; and (5) South Tahoe Public Utility District in California. *See* Docket No. 566.

### 3. Legal Representation

Relator was initially represented by Phillips & Cohen LLP and, later, additionally by Day Pitney LLP, McKool Smith Hennigan P.C., and Constantine Cannon LLP (collectively, "Relator's Counsel").[7] In February of 2010 (and some occasions thereafter), a number of county and city governmental entities entered into retainer agreements with Relator's Counsel authorizing said attorneys to represent them in this action.[8] In August of 2010, Virginia appointed Relator's Counsel to serve as "special counsel to the Commonwealth of Virginia" in this matter.[9]

### 4. Formosa Settlement

On September 12, 2013, as the Phase One trial was about to commence, Plaintiffs and Formosa executed a settlement agreement under which Formosa agreed to pay $22.5 million to settle the claims Plaintiffs alleged against it, as well as an additional $5.5 million in attorney fees and costs. *See* Settlement Agreement, Docket No. 1744-1, at 5. On January 16, 2014, this Court granted the Relator/Plaintiffs and Formosa's joint motion for approval of the settlement. *See* Docket No. 1839. In approving the settlement, this Court noted that the $28 million settlement figure "may pale in comparison to the billions of dollars plaintiffs' counsel believes are potentially at stake in this litigation" but it nonetheless "avoids the considerable risk and certain immense expense associated with further litigation of this matter." *See id*. at 3-4. It was also observed that "Formosa has never been the focus of this litigation. From the start, the case has focused upon J-M, and J-M – obviously – is still open to liability herein." *See id*. at 3. The Exemplar Plaintiffs proceeded to the Phase One trail against J-M.

---

[7] Phillips & Cohen filed this lawsuit in January 2006; Day Pitney has served as co-counsel since April 2009; McKool Smith has served as co-counsel since March 2012; and Constantine Cannon has served as lead counsel in the matter since April 2015. *See* Plaintiffs' Brief in Support of Entitlement to Attorneys' Fees, Docket No. 2910, at 1 n.1.

[8] The retainer agreements have been filed with the Court under seal.

[9] The appointment order has been filed with the Court under seal.

(7 of 78), Page 7 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 7 of 78
Case 5:06-cv-00055-GW-MAR     Document 3310     Filed 03/13/25     Page 6 of 73     Page ID
#:161840

5.  <u>Phase One Trial</u>

After a seven-week Phase One trial, on November 14, 2013, the jury returned a unanimous verdict for the five Exemplar Plaintiffs, finding that J-M was liable for violating the applicable FCA statutes with respect to each of the twenty-six projects at issue.  *See* Special Verdict Form, Docket No. 1794.  During the trial, the same counsel who represented Relator also jointly represented four of the five Exemplar Plaintiffs – namely, Calleguas Municipal Water District, the City of Norfolk, Palmdale Water District, and South Tahoe Public Utility District.  The City of Reno was represented by counsel from the Nevada Attorney General's Office.

6.  <u>Phase Two Trial</u>

The Phase Two trial was conducted in 2018 on the issue of damages for the same five Exemplar Plaintiffs.[10]  Prior to the Phase Two trial, there was an extensive period of discovery and litigation as to the nature and scope of the damages and statutory penalties to which the Plaintiffs were entitled.  *See J-M Mfg.*, 2020 WL 4196880, at *2-3.  The jury in the Phase Two trial could not reach a verdict on actual damages and the Court subsequently declared a mistrial.  *See* Docket No. 2765.  J-M then filed a Renewed Motion for Judgment as a Matter of Law ("JMOL"), which the Court granted.  *See J-M Mfg.*, 2020 WL 4196880, at 41.  In its order grating the JMOL motion, the Court concluded that the Exemplar Plaintiffs "failed to provide evidence at the Phase Two trial from which a reasonable jury could make a finding of an award of actual damages under the FCA that would not be erroneous as a matter of law, be totally unfounded and/or be purely speculative." *Id*.  Though the Exemplar Plaintiffs argued that they were entitled to one statutory penalty for each stick of pipe, the Court instead ruled that they were entitled to recover just one statutory penalty for each project at issue, totaling $162,000 in civil penalties.  *See* Docket Nos. 2904, 2994.

7.  <u>Initial Fees Litigation</u>

The focus of the litigation then turned to an interim fee award.[11]  For nearly a year, the parties litigated – and the Court tentatively resolved – numerous legal issues regarding the awarding of attorney fees based on the results of the Phase One and Phase Two trials.  After

---

[10] FCA statutes usually provide for two forms of damages: (1) statutory or civil penalties and (2) actual damages. *See, e.g.*, 31 U.S.C. § 3729(a).  During the Phase Two trial, the parties agreed that the issue of statutory/civil penalties would be tried to the Court.

[11] However, remaining in the litigation (and to be tried in what will be a Phase Three trial) are the myriad FCA claims of the remaining 150 or so real parties in interest plaintiffs.  The Court has told the parties that the Phase Three trial will not be bifurcated.  Hopefully, the prior rulings/holdings from the Phase One and Two trials will help inform the parties in their litigation choices/tactics.

(8 of 78), Page 8 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 8 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 7 of 73    Page ID
#:161841

multiple rounds of briefing and several hearings on issues related to attorney fees, it became clear that the parties intended to appeal substantive aspects of the Phase One and Phase Two trials. Accordingly, the Court deferred further consideration of attorney fees issues until the conclusion of an appeal because the appeal could impact decisions pertaining to the fees award. In addition, fees related to the appeal could be the basis for an additional fees award.

### 8. Appeal

In November 2021, both sides appealed. *See Hendrix ex rel. United States*, 76 F.4th at 1167. J-M challenged the Phase One verdict, and the Exemplar Plaintiffs challenged the Court's JMOL ruling and the awarding of only one statutory penalty for each of the twenty-six projects at issue. *Id*. The Ninth Circuit affirmed in full both the Phase One trial's jury verdict and this Court's Phase Two rulings. *Id*.

### 9. Instant Fees Litigation

With the outcome of the Phase One and Phase Two trials affirmed on appeal, attention turned back to attorney fees. On April 1, 2024, the Relator filed the instant Fees Petition seeking an interim fees award for all work completed through the appeal except for those incurred for the Phase Two trial. The fees and costs at issue are being sought solely by the Relator, not directly by any of the Exemplar Plaintiffs. No fees are sought for the work of Nevada Attorney General's Office.

## B. The Fees Petition

By any measure, the scope of Relator's Fees Petition in this complex litigation is extraordinary. The Fees Petition, together with both the publicly docketed and sealed declarations and exhibits in support of it, totals more than 2,300 printed pages. *See* Docket Nos. 3063, 3065. It comprises 30,419 separate billing entries from 106 different attorneys and legal staff, totaling 120,217 hours and $83,314,898 in fees. It also includes 19,035 separate cost entries, totaling $3,914,356 in costs. In sum, the Fees Petition seeks to recover $87,229,254.

Were these figures not extraordinary enough, Relator's Counsel asserts that they have excluded from the Fees Petition more than 100,000 hours of work (mostly as to counsel's efforts for the Phase Two trial) totaling more than $75 million in attorney fees and ask the Court to

(9 of 78), Page 9 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 9 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 8 of 73   Page ID
#:161842

"consider what Relator has declined to seek in deciding what to award Relator on this Petition."[12] *See* Fees Petition at 23-24.

After submitting the Fees Petition, Relator's Counsel withdrew 2,015 hours and $1,908,850 of requested fees related to the Formosa Settlement. *See, e.g.*, Docket No. 3197 (manually filed initial version of the Fees Petition Spreadsheet); Declaration of Elizabeth Sher, Docket No. 3089, Ex. A (under seal); Declaration of Kirk Dilman, Docket No. 3089-1 (under seal); Declaration of Stephen Hasegawa, Docket No. 3089-2 (under seal). The following tables summarize the adjusted Fees Petition, which is the starting point of the Court's consideration.

**Table One**
*Summary of Fees Petition*

| Total Billing Entries | 30,419 |
|---|---|
| Total Cost Entries | 19,035 |
| Total Hours | 118,202 |
| Total Attorney Fees | $81,406,049 |
| Total Costs | $3,914,356 |
| Total Fees & Costs | $85,320,405 |

**Table Two**
*Summary of Hours, Fees, and Hourly Rates*

| | Hours | Fees | Average Hourly Rate | Low Hourly Rate | High Hourly Rate |
|---|---|---|---|---|---|
| Partner | 48,246 | $47,475,118 | $1,088 | $625 | $1,595 |

---

[12] The Fees Petition elaborates on which fees and costs the Relator *did* and *did not* include:

> In preparing this Petition, Relator's Counsel have realistically assessed the fees reasonably attributable to Relator's ultimate success as a prevailing party. Consistent with earlier briefing on this subject, Relator has exercised billing judgment and voluntarily forsaken more than 100,000 hours (equating to over $75 million dollars in fees) expended on tasks that did not focus specifically on obtaining the Formosa settlement, obtaining and defending against challenges to the Phase 1 Verdict and the Phase 2 award of penalties in favor of Exemplar Plaintiffs, and Relator's pursuit of an award of fees. . . . Relator is foregoing any claim to fees for most of Phase 2 (damages), as well as thousands of hours spent on real party claim development, discovery, motion practice, and the like. Summaries of the extraordinary amount of time spent engaged in those efforts can be found in the various Declarations submitted herewith.

Fees Petition at 23-24.

(10 of 78), Page 10 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 10 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 9 of 73    Page ID
#:161843

| Associate/Counsel | 48,190 | $26,981,664 | $589 | $275 | $1,075 |
| Paralegal | 16,800 | $5,497,215 | $340 | $250 | $440 |
| Administrative | 4,965 | $1,452,052 | $300 | $215 | $500 |
| Total Fees | 118,202 | $81,406,049 | - | - | - |

Additionally, after being ordered to by the Court, Relator filed a supplement to the Fees Petition which accounts for all fees-on-fees that have been incurred by Relator's Counsel since originally filing the Fees Petition on April 1, 2024. *See* Fees Supp. That supplement submits an additional 1,360 billing entries, reflecting 2,107 hours of work and $1,594,425 in fees. *See* Declaration of Elizabeth Sher, Docket No. 3234, Ex. C (manually filed). The supplement to the Fees Petition also submits an addition 32 cost entries, reflecting $117,110 in additional costs.

And so, the story of the instant Fees Petition begins like this: after the first two phases of trial where $162,000 in civil penalties and $0 in actual damages were recovered, in addition to the $22.5 million settlement (plus an additional $5.5 million in attorney fees and costs) from Formosa, Relator now seeks reimbursement for more than $87 million in attorney fees and costs that have been incurred over the last nineteen years.[13]  And this is but one chapter of the story – as the final trial as to the claims of all remaining Plaintiffs will commence in just under a year.

### C.  Procedural Background

#### 1.  J-M's Motion to Strike

Almost immediately after Relator filed the Fees Petition, J-M moved to strike it, arguing *inter alia* that the Fees Petition could not be meaningfully reviewed. *See* Docket No. 3070. The Court denied the motion to strike but agreed that several threshold issues needed to be resolved before a scheduling order could be contemplated for responding to and deciding the Fees Petition. The Court also indicated from the beginning that, given the vast scope of the Fees Petition, it wanted the data presented in the form of a database that could be searched, sorted, and summarized, as well as presented in a task-based format to the greatest extent possible.

#### 2.  Initial Proceedings

As indicated *supra* in footnote 3, between June and November 2024 the Court held

---

[13] It should be noted that, during these nineteen years, the litigation was initially sealed and stayed for over four years pending the United States' decision as to whether it would intervene (*see* Docket No. 105), and there were other periods of time during which there were extensive stays of the case in the district court – *e.g.*, for the 21 months while the matter was on appeal to the Ninth Circuit (*see* Docket Nos. 2977, 3041).

(11 of 78), Page 11 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 11 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 10 of 73    Page
ID #:161844

numerous hearing and status conferences with the parties to resolve these threshold issues. Primarily, these preliminary proceedings focused on determining the extent of block-billing[14] in the Fees Petition and how the parties and the Court could address the Fees Petition given the prevalence of this issue. The Court itself developed a comprehensive spreadsheet that could be used to sort, analyze, and search the vast amount of data at issue and then ordered Relator to complete the build-out of that database. *See* Appendix, Ex. 1, Fees Petition Spreadsheet without Narratives; Ex. 4, Fees Petition Spreadsheet (under seal). For reasons that will become clear later, the Court also required the parties to make a threshold determination as to which entries are block-billed. This required a line-by-line analysis of all 30,419 entries. Purported issues related to Relator's Counsel's joint representation of four of the five Exemplar Plaintiffs were also decided. *See* Docket No. 3216.

After these threshold issues were resolved, the Court entered a comprehensive scheduling order that sequenced the resolution of the Fees Petition into three stages and determined that a Special Master would be appointed to assist with certain tasks. And as indicated earlier, the Court also ordered Relator to submit a supplement to his Fees Petition accounting for all fees-on-fees incurred since originally filing the Motion, such that a decision on the instant Fees Petition would encompass all the fees and costs at issue up to the commencement of the final phase of the case.

### 3. Three Stage Approach

Under this three-stage scheduling order, the Court made two determinations in Stage One: (1) the reasonable hourly billing rates; and (2) the scope of block-billing, by resolving the parties' disputes as to which individual time entries are/are not block-billed. In Stage Two, a Special Master was appointed to assist with resolution of other issues affecting the lodestar. Specifically,

---

[14] This Court has adopted the following definition of "block-billing." Both parties were given a chance to object to or otherwise propose alternative definition, but both Relator and J-M agreed to this definition.

Block-billing is the time-keeping practice by which an attorney or other timekeeper aggregates unrelated tasks into a single entry and associates that work with a single value of time without providing the specific amount of time performed for each task contained in the entry, rather than itemizing the time expended on particular tasks.

As will be fulsomely discussed herein, while block-billing is not barred as a matter of law, it is discouraged because it makes it more difficult for a court or opposing party to determine whether the time spent on particular tasks was reasonable. *See Welch v. Metro. Life Ins. Co.,* 480 F.3d 942, 948 (9th Cir. 2007); *Wit v. United Behav. Health,* 578 F.Supp.3d 1060, 1085 (N.D. Cal. 2022). The Ninth Circuit has affirmed the decisions of trial courts' applying a reduction to blocked-billed hours by certain percentages when supported by an adequate explanation for doing so. *See, e.g., Welch,* 480 F.3d at 948 (20%); *Lahiri v. Universal Music & Video Distrib. Corp.,* 606 F.3d 1216, 1222-23 (9th Cir. 2010) (30%).

(12 of 78), Page 12 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 12 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 11 of 73    Page
ID #:161845

the Special Master determined: (1) the reasonableness of the hours for all non-block-billed entries; (2) the reasonableness of the cost entries; and (3) how to address the fact that Relator's Counsel has already received an award of attorney fees under the Formosa settlement.  Also in Stage Two, the Court determined: (1) the reasonableness of the block-billed time entries[15] and (2) Relator's supplemental fees-on-fees.   In Stage Three, the Court addressed: (1) any adjustments to the lodestar; and (2) costs.

    4.  <u>Special Master</u>

On December 2, 2024, the Court appointed retired United States Magistrate Judge Michael R. Wilner to serve as a Special Master in this case and assist with resolving the Stage Two issues just described.  *See* Appointment Order.  The Court found that under Feder Rule of Civil Procedure 53(a)(1)(C) both the Court and the parties would benefit from the efficiency a Special Master would bring to addressing this posttrial matter that cannot be effectively and timely addressed by an available district or magistrate judge.  *Id*.  The Court also found that the cost of the Special Master shall be split equally among the parties.  *Id*.  Both parties expressly consented to the appointment of Judge Wilner as Special Master.  *See* Docket Nos. 3188, 3189.  As indicated *supra* in footnote 2, numerous briefs were filed and hearings held before the Special Master with respect to the Stage Two issues.  On January 30, 2025, the Special Master delivered the Fees R&R, presenting a final report and recommendation as to the reasonableness of the non-block-billed time entries and an appropriate offset amount for the Formosa settlement.  *See* Fees R&R.  On February 7, 2025, the Special Master also delivered the Costs R&R, presenting a final report and recommendation as to the reasonableness of the costs for which Relator seeks reimbursement.  *See* Costs R&R.

## II.    <u>Legal Standard</u>

The "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."  *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015).  "But Congress has authorized courts to deviate from this background rule in certain types of cases by shifting fees from one party to another."  *Fox v. Vice*, 563 U.S. 826, 832

---

[15] The Court granted J-M's request that a determination on the reasonableness of the block-billed entries wait until Stage Two such that it can be informed by the reasonableness assessment of the non-block-billed entries conducted by the Special Master.

(2011).  Under the federal False Claims Act and the relevant state law statutes at issue here, a prevailing relator is entitled to payment from the defendant for "reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."  31 U.S.C. § 3730(d)(1)-(2).  The FCA's legislative history recognizes that this fee-shifting provision is central to the statute's goals because "[u]navailability of attorneys fees inhibits and precludes many private individuals, as well as their attorneys, from bringing civil fraud suits."  S. Rep. 99-345, at 29 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5294.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.  This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "To determine what fee should be awarded, the court must first determine the 'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 406 (9th Cir. 1990) (citing *Hensley*, 461 U.S. at 433); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) ("[T]he lodestar figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence." (quotations omitted)); *Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) ("[U]nder federal fee-shifting statutes 'the lodestar approach' is 'the guiding light' in determining a 'reasonable' fee." (quoting *Perdue*, 559 U.S. at 551)).  "The number of hours to be compensated is calculated by considering whether, in light of the circumstances, the time could reasonably have been billed to a private client."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

"The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed."  *Welch*, 480 at 945-46.  After this initial burden is met, the Court then considers whether the requested fees are reasonable, which typically involves "considering both the proponent's evidence and evidence submitted by the fee opponent challenging the accuracy and reasonableness of the facts asserted by the prevailing party."  *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015) (quotations omitted).  "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."  *Moreno*, 534 F.3d at 1112.  But a court can

(14 of 78), Page 14 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 14 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 13 of 73   Page
ID #:161847

reduce the claimed hours where "documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).

Once the lodestar is determined, there is a strong presumption that the lodestar is a sufficient fee award. *Perdue*, 559 U.S. at 554 ("[T]there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee."); *Blum v. Stenson*, 465 U.S. 886, 897 (1984) ("When . . . the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee."). However, "in rare and exceptional cases, the district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Welch*, 480 F.3d at 946; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

In the end, "[t]here is no precise rule or formula for" determining a reasonable fee award, *Hensley*, 461 U.S. at 436, and "the amount of attorney's fees to be awarded is . . . within the discretion of the trial court and will not be disturbed absent an abuse of discretion," *Kerr*, 526 F.2d at 69. The Supreme Court has noted that trial courts have "wide discretion" in determining a fee award and that "[t]he essential goal in shifting fees is to do rough justice, not to achieve auditing perfection." *Fox*, 563 U.S. at 838.

## III. <u>Discussion</u>

### A. **Prevailing Party Status**

The Court has already determined that Relator is the "prevailing party" in this *qui tam* litigation under the False Claims Act statutes of California, Nevada, and Virginia. *See* MTS Order at 6 (adopting Docket Nos. 2936 and 2988 as final on the issues of whether Relator is entitled to attorney fees). Consequently, the Court has already ruled that Relator is entitled to recover the attorney fees and costs incurred to secure and defend the Phase One jury verdict and the statutory penalties awarded against J-M at the conclusion of the Phase Two trial.[16] *Id*. Resultingly, the critical predicate to analyzing this Fees Petition – as Relator's Counsel has frequently repeated – is

---

[16] While the Court continues to hold that the Relator was the prevailing party with respect to the *award* of statutory penalties, it is noted that Relator was not successful in his arguments as to the scope and the amounts of the statutory penalties either at the Phase Two trial or on appeal. *See Hendrix ex rel. United States*, 76 F.4th at 1172-73.

(15 of 78), Page 15 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 15 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 14 of 73   Page
ID #:161848

that a significant portion of Relator's Counsel fees have already been foresworn because they were not incurred to secure and defend the portions of the case for which Relator prevailed.

### B.  Lodestar Calculation

Having determined that Relator is the prevailing party under the relevant FCA statutes, the Court turns now to the largest task at hand: determining a lodestar calculation for reasonable fees.

#### 1.  Reasonable Hourly Rates

The Court will begin the lodestar calculation by determining reasonable billing rates. Relator has submitted fees from 106 separate timekeepers with different billing rates for each timekeeper.  Relator prepared the Fees Petition using current market rates, meaning there is little variation in the requested fees over the various years of the litigation for each timekeeper.[17]

To support the requested fees, Relator submitted declarations from Elizabeth J. Sher (Docket No. 3065-1), Eric R. Havian (Docket No. 3065-28), Kirk D. Dillman (Docket No. 3065-36), Stephen Hasegawa (Docket No. 3065-51), David W.S. Lieberman (Docket No. 3065-62), Tejinder Singh (Docket No. 3065-64), and Jeremy L. Friedman (Docket No. 3063-7).  The Court has reviewed these declarations and is also familiar with the work of many of the attorneys in this matter (from both parties), having presided over the case since 2007.  These declarations *inter alia* detail the experience and education of many of the attorneys submitted in the Fees Petition.

##### a.  Single Rates

As a threshold matter, given the numerous timekeepers in this voluminous Fees Petition, the Court will determine a single reasonable hourly rate for each level of timekeeper – specifically, Partner, Associate, Paralegal, and Administrative personnel.  This approach is consistent with this Court's prior fee opinions and also aligns with J-M's and its expert's proposed method.  *See Hous. Works v. Cnty. of Los Angeles*, No. 15-cv-8982-GW-(RAOx), 2018 WL 11309909, at *5 (C.D. Cal. July 12, 2018) (applying median rate from the Real Rate Report for both partners and associates); *Hernandez v. FCA US LLC*, No. 17-cv-5452-GW-(ASx), 2019 WL 2932637, at *3 (C.D. Cal. Jan. 4, 2019) (applying first quartile rate from the Real Rate Report for both partners and associates); *see also* J-M Stage One Op. Br. at 4.  Where an attorney has requested a lower hourly rate than that which the Court estimates to be the reasonable market rate, the Court will keep those rates as is; where a requested rate is higher than the reasonable market rate, the Court

---

[17] Where there is variation, it seems that such variation is generally attributable to certain timekeepers changing law firms, obtaining more years of experience as an Associate, or being promoted from Associate to Partner.

(16 of 78), Page 16 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 16 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 15 of 73    Page
ID #:161849

will lower the rate.  This approach is also consistent with this Court's prior fees awards.  *See
Hernandez*, 2019 WL 2932637, at *3 n.5 ("For attorneys who bill at an hourly rate below the Real
Rate Report . . . the Court will keep those rates as is.").

### b.  *Current or Historical Market Rates*

With respect to hourly rates, the most contentious point of disagreement between the
parties is whether the Court should apply current or historical rates.  Relator argues that the Court
should use current market rates and that the current rates submitted in the Fees Petition are
reasonable.  Relator acknowledges that the Court has discretion to apply current hourly rates or
the historical rates at which the attorneys actually billed with an interest enhancement.  However,
Relator argues that a majority of courts in the Ninth Circuit reach the conclusion that current
prevailing market rates should be applied.  Specifically, Relator argues that current rates are
necessary to compensate his counsel for the time value of money, for delay in payment, and
because J-M's "scorched earth defense" caused significant delay in this case.  In sum, Relator
argues that current market rates are appropriate because his counsel has spent tens of thousands of
hours and incurred millions of dollars in expenses successfully prosecuting this case for over
nineteen years, all on contingency.  *See* Relator Stage One Op. Br. at 2-6.

J-M argues that historical rates should be used *without* any enhancement.  First, J-M argues
that Relator has not established that the submitted rates are actually market-based or agreed to be
paid by (let alone billed to) actual clients.  J-M instead submits expert testimony adopting rates
from the Real Rate Report.[18]  J-M's expert recommends adopting the median figures from the Real
Rate Report for Partners and Associates practicing in commercial litigation in Los Angeles.  J-M
contends that the median rate should be adopted because this is "a garden-variety products-liability
case."[19]  *See* J-M Stage One Op. Br. at 2-7.  Second, J-M argues that the historical rates (as
determined by the Real Rate Report) should not be enhanced, neither because this is a *qui tam* case
or to account for any delay in payment.  That is because, as J-M sees it, compensation for delay is

---

[18] The *Real Rate Report* is a yearly publication from Wolters Kluwer ELM Solutions which contains an analysis
of law firm billing rates, with data broken out by timekeeper role, geography, practice area, firm size, and other factors.
*See Kohler v. Eddie Bauer LLC*, 792 F. App'x 446, 448 (9th Cir. 2019).

[19] J-M's characterization of this litigation as a "garden-variety products-liability case" would seem to be a gross
understatement (or perhaps a litotes) – for how can a decades-long FCA case involving hundreds of real party
governmental plaintiffs based on novel theories of liability concerning highly technical PVC pipe industry standards
that required at trial a large number of expert witnesses from both sides to explain the technology involved ever be
described as a "garden variety case" of anything?

(17 of 78), Page 17 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 17 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 16 of 73   Page
ID #:161850

not mandatory except in common fund cases and it would be a "windfall" here because Relator's Counsel expected to be paid only on contingency, which did not materialize, and because this *qui tam* action was "more akin to a typical products-liability case alleging fraud."  *See* J-M Stage One Op. Br. at 8-13; J-M Stage One Resp. Br. at 3-7.

The Court will make a threshold determination that the current 2023 Real Rate Report will be used to determine the reasonable market rate.  *See* 2023 Real Rate Report, Docket No. 3173-3, Ex. 4 (manually filed).  Reasonable hourly rates "are to be calculated according to the prevailing market rates in the relevant community."  *Blum*, 465 U.S. at 895.  It has long been this Court's (and other judges within the Central District of California's) practice to look to the Real Rate Report, which provides objective, empirical, market-based data that operates as a much more supportable benchmark of reasonable hourly rates than scouring a litany of (often outdated) cases and litigating the merits of self-reported (and perhaps self-interested) rates or expert declarations. *See Kohler v. Eddie Bauer LLC*, 792 F. App'x 446, 448 (9th Cir. 2019) ("The court reasonably considered the 2015 Real Rate Report (RRR), a national publication that provides statistical data on attorneys' fees by location and practice areas."); *Hicks v. Toys "R' Us-Delaware, Inc.*, No. 13-cv-1302-DSF-(JCGx), 2014 WL 4670896, at *1 (C.D. Cal. Sept. 2, 2014) ("The Court finds the [Real Rate Report] to be much more persuasive, as it is based on actual legal billing, matter information, and paid and processed invoices from more than 80 companies – a much better reflection of true market rates than self-reported rates in all practice areas as part of a national survey of top firms."); *Abrego v. City of Los Angeles*, No. 15-cv-00039-BRO-(JEMx), 2017 WL 3453293, at *6 (C.D. Cal. June 16, 2017) (using the 2015 Real Rate Report).

As such, the Court will look to the 2023 Real Rate Report (the most recent version) for insight into the market rate for reasonable attorney fees.  *See* 2023 Real Rate Report.  Specifically, the Court will look to the commercial litigation practice area in Los Angeles for specific market-based data on appropriate rates for the relevant market.  *See Relman Colfax PLLC v. Fair Hous. Council of San Fernando Valley*, No. 19-cv-8612-PSG-(JCx), 2021 WL 1895905, at *5 (C.D. Cal. Mar. 16, 2021), *aff'd*, No. 21-55458, 2022 WL 1616994 (9th Cir. May 23, 2022) (using the Real Rate Report's commercial litigation data to award attorney fees in an underlying FCA case).

Having determined that the Real Rate Report will be used to arrive upon reasonable hourly rates, the final issue is whether the Court should use current market rates, historical rates with an interest adjustment, or historical rates without any adjustment.  J-M argues that Relator's Counsel

(18 of 78), Page 18 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 18 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 17 of 73   Page
ID #:161851

chose to pursue this case on a contingency basis, meaning if the risk had paid off, they would have received a portion of the recovery as reward as well as the statutory fees. Since the contingency never really paid off in this case, J-M contends that using current rates would be a "windfall" because Relator's Counsel contemplated the delay in payment, which was factored into its risk/reward calculus. *See* J-M Stage One Resp. Br. at 6. On this issue, Relator argues that J-M ignores the majority of cases within the Ninth Circuit that overwhelmingly endorse the use of current rates or enhanced historical rates. In addition, Relator observes that his counsel has presented the more conservative of these options, providing examples that illustrate how using historical rates plus a prime rate of interest actually yields a *larger* hourly rate than what was actually submitted in the Fees Petition. Most persuasively, Relator points out that the blended average hourly rate being sought by Relator's Counsel is $587 per hour for Associates and $1,087 per hour for Partners, both of which are lower (in terms of associates, substantially lower) than the Real Rate Report's (upon which J-M's expert relies) third quartile for commercial litigation attorneys in Los Angeles. *See* Relator Stage One Resp. Br. at 2-3, 5-8.

The Court agrees with Relator in substantial part. First, the Ninth Circuit has held that "[d]istrict courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorneys' historical rates and adding a prime rate enhancement." *Welch*, 480 F.3d at 947; *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor. When recalculating the hourly rates for attorneys who left the firm on remand, the district court is, of course, free to use either current rates for attorneys of comparable ability and experience or historical rates coupled with a prime rate enhancement."); *Modar v. Mar. Servs. Corp.*, 632 F. App'x 909, 910 (9th Cir. 2015) ("By affirming an award that reflected neither current rates nor present value, the [Benefits Review Board] abused its discretion because it did not apply the correct legal standard.").

The underlying principle here is quite simple. As the Supreme Court has stated: "Clearly, compensation received several years after the services were rendered . . . is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989). With this case nearing its second decade, there can be no honest assertion that historical

(19 of 78), Page 19 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 19 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 18 of 73    Page
ID #:161852

rates without any adjustment to present value represents full compensation today for the work Relator's Counsel has successfully performed.[20]   In addition, J-M's arguments concerning the contingent nature of Relator's Counsel's representation is unpersuasive because the applicable FCA statutes explicitly enumerate fee-shifting provisions that apply regardless of how any agreed-upon contingency unfolds, so long as Relator is deemed a prevailing party.  The Court therefore finds that the use of historical rates without any adjustment for the time value of money or delay in payment is inappropriate in this case.

At least as an academic exercise, the Court would agree in principle that the use of historical rates with a prime interest adjustment could yield a more precise reasonable hourly rate. However, because the interest adjustment compounds monthly, accurately calculating that rate for each of the 30,419 separate billing entries in this long-running case would be an enormous practical undertaking.  But more importantly, as Relator has aptly noted, this calculation is likely to yield even *higher* hourly rates than those the Relator has actually requested, and the Court is not prepared to award more than what Relater seeks.  The Court will therefore exercise its discretion and look

---

[20] At the initial hearing, J-M vociferously relied upon the Supreme Court's decision in *Perdue* for the proposition that Relator's Counsel should not be compensated for any delay in payment – *i.e.*, that historical rates should be used without any adjustment.  The Court relegates discussion of this argument to this footnote for two reasons.

First, J-M did not cite *Perdue* or make this argument in either of its briefs.  If J-M thought *Perdue* was its best case for the proposition that historical rates should be used without any adjustment, it should have said so in its initial papers and given Relator an opportunity to respond, rather than waiting until the hearing to make the argument for the first time.

Second, and more importantly, *Perdue* does not support J-M's position.  In *Perdue*, the Supreme Court addressed the issue of whether an attorney's performance or the excellent results she obtains can form the basis of an enhancement to the presumptively reasonable lodestar calculation.  559 U.S at 554.  The Court held that there are circumstances where an enhancement to a fees award is appropriate, but such an enhancement requires "specific evidence that the lodestar fee would not have been 'adequate to attract competent counsel.'"  *Id.* (quoting *Blum*, 465 U.S. at 897).  The Supreme Court recognized in *Perdue* that attorneys in civil rights cases presumably understand that they are unlikely to be compensated, if at all, until the successful resolution of the case, thereby rendering enhancements to compensate for a delay in payment inappropriate except for the "unusual case." *Id.* at 555-56.  But the Supreme Court did not consider, let alone decide, that this anticipated delay in payment means that under federal fee-shifting statues, attorneys should be compensated at the historical rates they charged when the work was performed without any adjustment to the time at which fees are actually received.  To the contrary, the Supreme Court stated what can only have been known to J-M before it made this argument for the first time at the hearing (because it was the basis of this Court's tentative ruling): "Compensation for this delay is generally made 'either by basing the award on current rates or by adjusting the fee based on historical rates to reflect present value.'"  *Id.* at 556.

Awarding historical rates without any adjustment to present value or current market rates would not represent full compensation because it does not consider the time value of money and does not account for any delay in payment. Nor would such an approach yield a reasonable fee sufficient to induce competent counsel to take on a complex FCA case such as the one at bar.  Not to mention, the Relator has not even requested an enhancement to the lodestar calculation, which is the only issue considered in *Perdue*.

(20 of 78), Page 20 of 78      Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 20 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 19 of 73   Page
ID #:161853

to current market rates as the appropriate benchmark for determining reasonable rates in this case.

### c. *Determination of Reasonable Rates*

Having established that the determination of reasonable rates will be based on the Real Rate Report, the Court will turn now to deciding the single hourly rate to be used for Partners, Associates,[21] Paralegals, and Administrative personnel.

### i. Partners

Beginning with Partners, the Court finds that the hourly rates submitted in the Fees Petition for Partners are overall excessive. According to the 2023 Real Rate Report, the median hourly rate for a litigation Partner working in commercial litigation in Los Angeles was $800. *See* 2023 Real Rate Report at 88. The first quartile was $596, and the third quartile was $1,156. *See id*. Of the 14,327 individual billing entries Relator submitted in the Fees Petition from Partners, 11,196 (78%) are in excess of the $800 median and 6,644 (46%) are in excess of the $1,156 third quartile. Indeed, 2,805 of these entries were billed in excess of $1,500.[22] The blended hourly rate for Partners as submitted in the Fees Petition is $1,088, placing the blended rate for Partners roughly between the median and third quartile of the Real Rate Report. Though, as just detailed, many of the submitted hourly rates are unreasonably high, given the complexity of this case and the skill and experience of the Partners who litigated it, the Court finds the blended rate generally appropriate. For that reason, the Court will adopt an hourly rate for Partners squarely between the median and third quartile. As such, the Court will assign a single rate of $978 for all Partners, except for those who billed lower than this rate.[23]

---

[21] Because the Real Rate Report does not differentiate rates for "Counsel" (which is the designation of certain of Relator's attorneys), the Court will adopt one rate for all attorneys identified in the Fees Petition as an "Associate" or "Counsel." At the hearing, Relator's counsel requested that Harry Litman be classified as a Partner, rather than Counsel. The Court has reviewed the Fees Petition Spreadsheet and confirms that all time entries from Litman are designated as Partner, not Counsel. Whatever the confusion may be, the Court is satisfied that Litman's capabilities and experience no doubt qualify him for Partner rates. *See* Declaration of Harry Litman, Docket No. 3063-8.

[22] It is noted that the high hourly rates of $1,500 or more for said partners were applied regardless of the particular work that was being done by said attorneys – for example, counsel would get the $1,500 hourly fee whether he or she was arguing a motion before the Court or spending the time traveling to and from the courthouse (sometimes across country).

[23] At the hearing, Relator's counsel accepted the Court's use of the Real Rate Report but strongly argued that third quartile rates would be appropriate in this complex case. The Court does not quibble with the assertions that Relator's Counsel are skilled attorneys with expertise in FCA matters, nor that this case was complex. The Court would note, however, that the $978 adopted rate for Partners is higher than the national third quartile rate for all commercial litigation Partners, even those with 21 or more years of experience. *See* Real Rate Report at 90. In

(21 of 78), Page 21 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 21 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 20 of 73    Page
ID #:161854

### ii.  Associates

According to the 2023 Real Rate report, the median hourly rate for a litigation Associate working in commercial litigation in Los Angeles was $645.  *See* 2023 Real Rate Report at 88.  The first quartile was $525, and the third quartile was $914.  *See id*.  The Court finds the median rate for Associates reasonable and appropriate for the complexity of this case.  This finding is buttressed by the fact that the blended rate for Associates as submitted in the Fees Petition is $589, roughly between the median and first quartile.  As such, the Court will assign the Real Rate Report's median rate of $645 for all Associates, except for those who billed lower than that rate.[24]

### iii.  Paralegals

Because the Real Rate Report does not detail paralegal rates by city, the Court will look to the national data for Paralegals working on commercial matters.  *See* 2023 Real Rate Report at 44. In the 2023 Real Rate Report, the first quartile for paralegals working on commercial matters was $196, the median was $270, and the third quartile was $350.  The Court finds that the median rate of $270 is reasonable for the Paralegals who worked on this FCA matter.  As such, the Court will assign a single rate of $270 for all Paralegals, except for those who billed lower than this rate.

### iv.  Administrative Personnel

The Real Rate Report does not delineate market data on hourly rates for Administrative personnel.  In a tentative ruling, the Court indicated that it would adopt a $150 hourly rate for Administrative personnel, using the $270 paralegal rate as a relative benchmark.  In supplemental briefing on this issue, Relator's Counsel argues that the catchall designation of "Administrative" actually encompasses timekeepers who provided litigation support during discovery and trial, document management, library services, graphics, and computer/audio/video services.  *See* Relator Stage One Supp. Br. at 1.  Based on the training and experience of these individuals, Relator argues

---

addition, the rate is higher than the third quartile rate for all Partners at small to medium size (and even some large) law firms, with only firms constituting more than 501 attorneys charging a third quartile rate for Partners higher than the rate adopted here.  *See id*. at 92-93.  Considering that the Los Angeles market rates are some of the most expensive in the country and that some of Relator's Counsel worked at smaller firms outside of Los Angeles, the Court finds that the adopted rate for Partners, which is above the median rate for Los Angeles commercial litigation Partners, is reasonable.

[24] *See* footnote 23, *supra*.  The $645 adopted rate for Associates, which is the median for the Los Angeles market, is higher than the national third quartile rate for all commercial litigation Associates, even those with seven or more years of experience.  *See* Real Rate Report at 91.  In addition, the rate is higher than the third quartile rate for all Associates working at small to medium size (and even some large) law firms, with only firms constituting more than 501 attorneys charging a third quartile rate for Associates higher than the rate adopted here.  *See id*. at 92-93.

(22 of 78), Page 22 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 22 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 21 of 73   Page
ID #:161855

that a blended rate of $237 is appropriate.  J-M disagrees, arguing that much of the work submitted under the "Administrative" label was clerical or low-level work, such as organizing materials, retrieving documents, calendaring, printing, and unpacking.  While J-M concedes that there are examples of more technical or complicated work under this classification, it argues that the blended rate of $150 is appropriate.  *See* J-M Stage One Supp. Br. at 1.

The Court has considered the parties' supplemental arguments and carefully reviewed the narratives of the work submitted under the "Administrative" classification.  While there are many examples of important research and litigation support tasks (many of which were legal research and e-discovery tasks), abound are many examples of non-technical work (such as creating binders of documents for depositions and unpacking/organizing binders in the trial war room).  Based on the parties' supplemental briefing that further elucidates the training and experience of some of the individuals under the Administrative label and the nature of the tasks actually performed, and keeping in mind that the Court is adopting one blended hourly rate, the Court finds that $195 is a reasonable hourly rate for Administrate personnel.  This amount is consistent with that recently awarded by other courts in this district.  *See Alvarez v. City of Oxnard*, No. 19-cv-8044-PSG-(JCx), 2023 WL 11950648, at *12 (C.D. Cal. Mar. 20, 2023) (applying a reasonable hourly rate of $195 for paralegals and certified law students based on other court's previous findings for litigation support staff); *Rolex Watch USA Inc. v. Zeotec Diamonds Inc.*, No. 21-cv-089-PSG-(VBKx), 2021 WL 4786889, at *4 (C.D. Cal. Aug. 24, 2021) (applying a reasonable hourly rate of $150 for litigation support staff and collecting cases finding similar amounts reasonable); *but see United States v. Allergan, Inc.*, No. 18-cv-203-JVS-(KESx), 2023 WL 4754637, at *3 (C.D. Cal. July 24, 2023) (applying a reasonable rate of $400 for litigation support staff, a high rate warranted by evidence of the litigation support personnel's qualifications).

### d.   Summary of Reasonable Hourly Rates

Based on the foregoing discussion, the Court finds the following hourly billing rates reasonable for purposes of the instant Fees Petition: $978 for Partners, $645 for Associates, $270 for Paralegals, and $195 for Administrative personnel, except for those timekeepers who billed lower than these rates, in which case the hourly rate shall remain as the submitted rate.  The parties have adopted these rates into the Fees Petition Spreadsheet and expressly assented to the spreadsheet's accuracy, which will be used as the basis for the rest of the calculations.  *See* Appendix, Ex. 7, Email Submitting Fees Petition Spreadsheet (under seal); Ex. 1, Fees Petition

(23 of 78), Page 23 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 23 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 22 of 73    Page
ID #:161856

Spreadsheet without Narratives; Ex. 4, Fees Petition Spreadsheet with Narratives (under seal).

**Table Three**
*Tentative Lodestar Calculation After Applying Reasonable Hourly Rates*

|  | Hours | Fees |
|---|---|---|
| Partner | 48,246 | $41,304,584 |
| Associate/Counsel | 48,190 | $24,150,663 |
| Paralegal | 16,800 | $4,504,573 |
| Administrative | 4,965 | $968,253 |
| Total Fees | 118,202 | $70,928,073 |

2. <u>Reasonableness of Non-Block-Billed Fees</u>

    a. *The Special Master's Report & Recommendation*

On January 30, 2025, the Special Master delivered a 47-page Report & Recommendation on Fees and the Formosa Settlement. *See* Fees R&R. The Fees R&R comprehensively summarizes the Special Mater's findings in each of the eleven stages of the litigation as defined by Relator in the Fees Petition. Additionally, the Special Master also delivered a spreadsheet that: (1) contains a notation confirming the Special Master "touched" (*i.e.*, reviewed) *each* non-block-billed entry; (2) where applicable, notates a code explaining the reason for a reasonableness reduction; (3) defines a percentage for which each billing entry is determined to be compensable; and (4) does the math, applying the percentage to each billing entry and totaling the results. *See* Appendix, Ex. 5, Special Master Fees Spreadsheet (under seal).

Recall that the Fees Petition contained 30,419 total billing entries, 18,187 of which were determined to be non-block-billed. As the Special Master noted, these "entries are nominally more numerous than the block-billed data but comprise only about one-third of the overall billed time in the fee request (44,162 hours, or just under $25 million)." Fees R&R at 7. With respect to the non-block-billed time entries, the Special Master recommends that the Court find $19,201,752[25] in fees reasonable. *Id.* The Special Master confirmed that he reviewed *each* of the 18,187 non-

---

[25] In the Fees R&R, the Special Master reports finding $19,198,427 reasonable. Though not raised by the parties, the Court discovered during its independent review one programming error in the Special Master Spreadsheet whereby cell K:18183 (Unique ID# PC-003954) did not populate the adjusted hours, resulting in $3,325 worth of compensable time not being totaled. The Court has corrected this calculation when interlineating the Special Master's calculations into the final Fees Petition Spreadsheet.

(24 of 78), Page 24 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 24 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 23 of 78   Page
ID #:161857

block-billed entries. *Id*. at 14. The Special Master's reasonableness analysis concludes that approximately 77% of the Relator's non-block-billed entries were reasonable under the totality of the circumstances in this litigation. *Id*. at 1. The Court appreciates the Special Master's thorough and careful report, and his clearly presented recommendation.

      *b.   Standard of Review*

      After receiving a Special Master's report, the district court "may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit [it] to the master with instructions." Fed. R. Civ. P. 53(f)(1). Because the parties have not stipulated otherwise, this Court must decide *de novo* all objections to findings of fact and conclusions of law made or recommended by the Special Master. *See* Fed. R. Civ. P. 53(f)(3)-(4). The Court gave both parties the opportunity to file objections to the Special Master's Fees R&R and an opportunity to be heard at two hearings. *See* Fed. R. Civ. P. 53(f)(1). The parties filed simultaneous opening and responsive briefs with concomitant declarations and supporting evidence. *See* Relator Stage Two Op. Br.; J-M Stage Two Op. Br.; Relator Stage Two Resp. Br.; J-M Stage Two Resp. Br. The Court reviewed the Fees R&R and the Special Master Fees Spreadsheet in its entirety and carefully considered the parties briefing and the oral argument presented at two lengthy hearings.

      After reviewing the parties' objections, a further note on the standard of review is warranted. The crux of the parties' various objections is that one side thinks the Special Master reduced fees too much (Relator) and one side thinks he reduced fees too little (J-M). But the parties are reminded of three critical aspects relevant to this standard of review. First, objections to the Special Master's report and recommendation are not a negotiation. That is, objections to the Special Master's reasonableness review will be entertained only to the extent that they are specifically aimed at reviewing the correctness of the Special Master's conclusions of fact and law. Generalized grievances seeking to negotiate the compensable amount of fees upward or downward will be disregarded. That leads to a second point. The Court has "wide discretion" in determining the reasonableness of fees. *See Fox*, 563 U.S. at 839. And the Court specifically granted the Special Master "broad authority to assist the Court" with determining "the legal and factual issues" concerning the reasonableness of attorney fees, the Formosa settlement offset, and the reasonableness of costs. *See* Appointment Order. That is, the Court specifically granted the Special Master authority to make discretionary decisions. So now, the Court is tasked with reviewing *de novo* discretionary decisions, a somewhat strange standard of review.

(25 of 78), Page 25 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 25 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 24 of 73    Page
ID #:161858

As a result, the Court will not necessarily begin anew by completely redoing every line-by-line review of the Fees Petition for each of the party's objections. The Court will do that if necessary, but not in every instance that Relator thinks fees were reduced too much or J-M thinks they was reduced too little. This would defeat the purpose and expense of the Special Master because, as the Court noted in its appointment order, "the Court and the parties would benefit from the efficiency a Special Master would bring to addressing this post-trial matter that cannot be effectively and timely addressed by an available district or magistrate judge." Appointment Order at 4. The parties themselves selected the Special Master and expressly consented to his appointment. And the parties did an excellent job in making this selection, as the Special Master is assuredly well equipped to perform the discretionary task at hand here, given his 10+ years of service as a Magistrate Judge on this Court.

All of this is to say that on *de novo* review, the Court will not give any deference to the Special Master's findings and will look anew at the record presented to the Special Master. The Court will review the Special Master's conclusions of fact and law and will consider whether the presented objection is specifically reviewable. In the end, the Court is reviewing *de novo* discretionary decisions, so where the Court largely agrees with the Special Master's report, it will adopt it; where it disagrees in whole or in part, it will make independent findings and modify or reject the report. *See Sukumar v. Direct Focus, Inc.*, 349 F. App'x. 163, 165 (9th Cir. 2009) ("The district court gave each of [plaintiff's] claimed discrepancies a fresh look. The district judge independently considered all of the evidence that the special master considered, including over 270 pages of exhibits and 25 pages of objections. We hold the district judge performed the necessary de novo review. Nothing more was required." (citation omitted)).

With the standard of review delineated, the Court must observe as a threshold matter that almost the entirety of J-M's opening brief and Relator's primary objections are largely unreviewable. Neither presents a discrete objection to the Special Master's Fees R&R but instead just complains about the result. Nonetheless, the Court will liberally construe both parties' briefs by addressing the discrete objections that are presented in such a way that this Court can actually review them.

### c. *Relator's Objections to the Fees R&R*

The Court will begin by addressing Relator's objections. Relator raised four objections to the Special Master's Fees R&R, which the Court will consider in turn. *See generally* Relator Stage

(26 of 78), Page 26 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 26 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 25 of 73   Page
ID #:161859

Two Op. Br.  Relator also objects to the Special Master's recommendation with respect to the Formosa settlement offset, which the Court will separately address later.

### i.  Excessive and Overbilled Time

First, Relator objects to the Special Master's reduction of billing entries determined to be excessive or overbilled.  The Special Master identified 2,172 non-block-billed entries that he found to be "an excessively / overbilled task, or a task for which the Relator was not the prevailing party (making this presumptively an unreasonable claim)."  Fees R&R at 15.  In total, the Special Master recommends reducing these excessive/overbilled claims by $2,616,323.  *See* Appendix, Ex. 8, Excessive & Overbilled Entries (under seal).

Relying on *Moreno*, Relator contends that these fees must be deferred to and should be awarded in full.  Relator argues that there was an asymmetrical burden between his more time-consuming and difficult task of uncovering and proving a fraud than J-M's job of simply concealing and defending it.  This is proven, Relator contends, by the fact that Relator spent just two-thirds of the fees J-M has spent during the fees-on-fees litigation, a period of the case without such asymmetry.  *See* Relator Stage Two Op. Br. at 1-3.

J-M argues that Relator never presented the Special Master with any objective, factual basis for quantifying the differentiation in litigation burdens.  In any event, J-M argues that it had a huge litigation task itself and Relator fails to acknowledge that he had the assistance of cooperate former J-M employees to help make his case.  J-M also argues that Relator's analogy to the fees-on-fees litigation is misplaced because the only reason Relator spent less during this phase is because he did less, by refusing to engage in a task-based analysis.  *See* J-M Stage Two Resp. Br. at 5-6.

Here, Relator has broadly objected to *every* instance of excessive/overbilled time the Special Master found among the non-block-billed time.  But Relator fails to set forth any *specific* objection, other than to suggest that its time is deserving of deference because Relator's Counsel worked on contingency.  *See Moreno*, 534 F.3d at 1112 ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").  In essence, Relator argues in this objection that the Court should reject the entirety of the Special Master's analysis with respect to excessive/overbilled time and accept instead the Fees Petition just as he submitted it.

The Court overrules Relator's objection for a whole host of reasons.  First, and most

(27 of 78), Page 27 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 27 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 26 of 73   Page
ID #:161860

importantly, Relator has presented the Court with no specific basis to review the Special Master's work. In essence, Relator just disagrees with the Special Master's findings. Second, the Court has independently looked at the record before the Special Master as well as the Special Master's findings and would have reached substantially similar findings. It is clear from this Court's review that the Special Master did consider (after reviewing evidence of staffing levels submitted by J-M) "how large, how complex, and how closely fought this lawsuit was." Fees R&R at 13. That the "size and scope" of J-M's evidence caused the Special Master to "recalibrate where the reasonableness line really was" and, despite this, the Special Master still found some of Relator's work unreasonably billed refutes the contention that the Special Master failed to properly consider whatever litigation asymmetry there may have been. Additionally, Relator has not shown how, or if at all, he attempted to quantify this litigation asymmetry before the Special Master. Though this Court does not quibble with Relator's Counsel's contention that they had a massive litigation undertaking in this case, the Court agrees that some of their staffing was excessive and that the Special Master reached well-reasoned conclusions of fact. Finally, the Court rejects Relator's legal argument pertaining to unfettered deference. No doubt, *Moreno* certainly requires a court to defer to a winning lawyer's professional judgment, especially in contingency fee cases where lawyers are unlikely to incur unnecessary fees and costs because of the uncertainty of payoff. But *Moreno* does not support Relator's assertion that the Special Master's reasonableness review must be entirely thrown aside to make room for Relator's requested fees in full. What would be the point of a reasonableness requirement? This Court is commanded by the Supreme Court to award only the time that is deemed to be reasonable. *Hensley*, 461 U.S. at 434 ("The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'"). That's what was done here.

For all these reasons, the Court **OVERRULES** Relator's objection.

ii. <u>Administrative Time</u>

Second, Relator objects to the Special Master's disallowance of certain billing entries deemed to be unrecoverable because they were purely administrative tasks. The Special Master identified 331 tasks that he found to be "an administrative task improperly billed as an expense." Fees R&R at 15. In total, the Special Master recommends reducing these administrative tasks by $129,999. *See* Appendix, Ex. 9, Administrative Entries (under seal).

Relator argues that because the Court has already determined that it is reasonable for

(28 of 78), Page 28 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 28 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 27 of 73    Page
ID #:161861

commercial litigation firms in Los Angeles to bill administrate personnel at a rate of $195 per hour, these entries should be allowed in full at the rate set by the Court. Relatedly, Relator argues that several of Relator's Counsel's firms regularly bill fee-paying clients for such services, rendering these claims even more reasonable here. *See* Relator Stage Two Op. Br. at 3.

J-M argues that the Special Master properly followed *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) in discounting clerical tasks that are subsumed within overhead and not compensable, such as organizing files and pleadings, reviewing the docket, and calendaring. J-M Stage Two Op. Br. at 6.

Here, the Court finds that the Special Master made the correct legal determination that time spent on clerical tasks is generally subsumed into a law firm's overhead, not billed to clients. Fees R&R at 3-4 (citing *Nadarajah*, 536 F.3d at 921). In addition, the Court finds that the Special Master made the correct factual determination that these administrative tasks fit that bill. In its review of the challenged time records, the Court finds that, while some might arguably (though not specifically identified) be associated with the higher-level discovery-related work Relator contends, by and large these entries are for clerical tasks, such as calendaring and file management tasks.

For these reasons, the Court **OVERRULES** Relator's objection.

### iii. Topstaffing, Conferences, and Coordination Meeting

The Court will address Relator's third and fourth objections together because they turn on similar legal principles. In his third objection, Relator objects to the Special Master's reduction of time the Special Master deemed unreasonable because of "topstaffing," which is defined in the Fees R&R as a situation "where a partner did associate-level work (or, in limited circumstances, a lawyer did work of a paralegal or administrator)." Fees R&R at 15. The Special Master identified 236 of such entries among the non-block-billed time and recommends a total reduction of $329,593.[26] *See* Appendix, Ex. 10, Topstaffed Entries (under seal). Relying again on *Moreno*, Relator argues that this reduction is impermissible because using lower-level attorneys for certain tasks also means that higher-level attorneys would need to supervise their work. As such, Relator contends these entries should be allowed in full. *See* Relator Stage Two Op. Br. at 3-4. J-M argues that the Special Master appropriately discounted the topstaffed work but that further reductions

---

[26] The formulaic error identified *supra* in footnote 25 accounts for the discrepancy between the Special Master Spreadsheet and that reported here, as Unique ID# PC-003954 is a top-staffed entry compensable at 50%.

(29 of 78), Page 29 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 29 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 28 of 73    Page
ID #:161862

should have been applied.  J-M specifically argues that the partners working on Relator's case billed more than three times as many hours as J-M's, and Relator has failed to demonstrate the reasonableness of staffing so many partners on the case.  J-M Stage Two Resp. Br. at 6-7.

In his fourth objection, Relator objects to the Special Master's disallowance of certain billing entries because they were related to conferences and coordination meetings.  The Special Master identified 2,624 tasks that he found to be "a duplicative or overstaffed task."  Fees R&R at 15; *see* Appendix, Ex. 11, Duplicative & Overstaffed Entries (under seal).  Relator now objects to the reduction or disallowance applied to 677 of these entries.  *See* Declaration of Stephen Hasegawa, Ex. D, Docket No. 3243 (manually filed).  These 677 specific reductions/disallowances equate to a total reduction of $113,630.  *Id.*  Relator objects to the reduction or disallowance of these entries because they all relate to conferences or coordination meetings that are compensable.  Relator argues that because the Special Master otherwise reduced time entries for topstaffing and expressed a preference for work being performed by lower-level attorneys, these meetings are consistent with the Special Master's analysis because the more senior attorneys needed to confirm and supervise the team.  Additionally, Relator contends that these conferences fit the Special Master's bill of "short conferences" because they were all an hour or less with limited participants.  *See* Relator Stage Two Op. Br. at 4-5.  J-M responds succinctly, stating that the Fees R&R correctly reduced these fees, but not by enough.  *See* J-M Stage Two Resp. Br. at 7.

The Court has independently reviewed the legal and factual matters at issue in these objections.  On the law, Relator primarily relies on *Moreno* for the general proposition that these specific billing entries are compensable because the Court cannot disregard his fees on the basis of relative efficiencies in staffing models.  The passage of *Moreno* upon which Relator relies, however, was discussing a district court's reduction of *hourly rates* based on the court's belief that the case could have been more efficiently staffed.  *Moreno*, 534 F.3d at 1114.  The Ninth Circuit held that the district court improperly determined the hourly rate by speculating "how other firms would have staffed the case."  *Id.*  But here, the Special Master (authorized by the Court to make legal and factual determinations as to the reasonableness of the non-block-billed entries) is not looking at efficiencies of Relator's Counsel's staffing for purposes of determining an hourly rate, let alone relative staffing as compared to other firms.  The Court has already determined reasonable hourly rates based on current market data.  Instead, under *Hensley*, the Court must exclude those fees that are not deemed to be "[r]easonably expended on the litigation" because "cases may be

(30 of 78), Page 30 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 30 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 29 of 73   Page
ID #:161863

overstaffed, and the skill and experience of lawyers vary widely." *Hensley*, 461 U.S. at 434. For this reason, the task at hand is to "exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Id.*

On the facts, with respect to topstaffing, the Special Master made specific and reasoned determinations for omitting certain time. For instance, in Stage Three, the Special Master found that an associate spent "hundreds of hours 'selecting' or 'coding' documents for several depositions or experts" which was partially reduced for "inefficient lawyer topstaffing." Fees R&R at 24. Similarly, the Special Master found that in Stage 11 (the fees-on-fees litigation) certain fees were unreasonable because, given the caliber of the attorneys who regularly practice in the *qui tam* field, Relator's Counsel should not have had to educate themselves on fee litigation. Fees R&R at 38-39. Citing the very passage of *Moreno* upon which Relator now relies, the Special Master explicitly factored into his calculation that "[t]he corollary to this is that some amount of extra partner work / topstaffing might well be reasonable; let the more experienced senior lawyers spend time efficiently on the briefing." *Id.*

With respect to conferences and coordination meetings, the Special Master observed that J-M "rightly raises concerns about the propriety of numerous all-hands meetings and mass court appearances involving Relator's lawyers during the case." Fees R&R at 15 n.1. The Special Master then determined that "[s]hort conferences that efficiently conveyed information to team members in this lengthy, complicated case are far less of a concern than longer sessions" so his "scrutiny typically focused more on the length of these meetings rather than their frequency or the number of participants." *Id.* Furthermore, the Special Master distinguished between the lead partners on the case and other participants, noting that "[a] client would expect to be billed to some extent for the lead lawyers to attend court proceedings, to be briefed on a case, or to inform subordinates about the state of play" but that it was sometimes excessive for others to attend these meetings. *Id.* Throughout the Fees R&R, the Special Master specifically noted that conferences and coordination meetings were a persistent issue with the non-block-billed entries. *See* Fees R&R at 17 (Stage Two), 24-27 (Stage Three), 40 (Stage Ten), 41 (Stage 11).

The Court finds that these reductions for topstaffing and conferences are well supported factual determinations premised upon proper application of the law. In sum, *Moreno* cannot carry the weight Relator places upon it here. The Special Master did not make a judgment as to the

(31 of 78), Page 31 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 31 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 30 of 73    Page
ID #:161864

efficiency of Relator's Counsel's staffing for purposes of determining a reasonable *hourly rate*, but instead for determining whether the staffing resulted in time that was *reasonably expended.* "Indeed, since *Moreno,* various courts in the Ninth Circuit have found that hours are not reasonably expended when routine tasks are billed by highly experienced attorneys, rather than being delegated to colleagues with appropriate levels of experience." *Hernandez v. Taqueria El Grullense*, No. 12-cv-03257-WHO, 2014 WL 2611214, at *3 (N.D. Cal. June 11, 2014) (collecting cases). The Court appreciates the Special Master's specific and well-reasoned adjustments to the reasonableness of these fees. The Special Master made individualized assessments, for example, as to who attended certain meetings and which attorneys performed certain tasks, and ultimately concluded that a fee-paying client would pay for some but not all of this time. The Court finds that this is the task *Hensley* commands, and *Moreno* is not to the contrary.

For these reasons, the Court **OVERRULES** Relator's third and fourth objections.

### d.  *J-M's Objections to the Fees R&R*

As noted above, J-M's opening brief, though styled as various objections the Fees R&R, largely sets out to make generalized complaints about the Fees R&R but in most instances gives the Court little basis to reconsider the Special Master's recommendation or to reduce compensable fees, which is ultimately J-M's goal. The Court has nonetheless endeavored to liberally construe J-M's brief to address as many of its arguments that are actually reviewable as objections. J-M also objected to the Special Master's recommendation with respect to the Formosa settlement offset, which the Court will separately address later.

### i.  Burdens of Production & Persuasion

The Court will construe the first seven pages of J-M's opening brief as facial objections to the Fees R&R on the grounds that Relator has not met his burden of production or persuasion. *See* J-M Stage Two Op. Br. at 5-11. First, J-M objects to the Special Master's finding that the Relator carried his burden of production. Though J-M makes no specific objection as to how the Court is supposed to review or revise the Fees R&R on this ground, J-M maintains that Relator has not met his burden of establishing the claimed time was reasonable. J-M Stage Two Op. Br. at 5-6. Relator responds by observing that his counsel produced all individual time entries describing the work performed for which Relator now seeks compensation, presented in a format that broke the litigation into stages and provided summaries and examples of the major tasks performed in each stage. Relator Stage Two Resp. Br. at 1-3.

(32 of 78), Page 32 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 32 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 31 of 73   Page
ID #:161865

Additionally, J-M argues that Relator has not met his burden of persuasion. J-M argues that it submitted evidence and expert opinions showing that the case was overstaffed and Relator did not rebut those opinions with any experts of its own. Because of Relator's failure, J-M contends, the Special Master erred by restructuring the application to a usable format and reviewing the non-block-billed entries line-by-line. J-M argues that this methodology is "unreviewable," "impressionistic," and just "subjective observations." Instead, J-M contends that this is the egregious case that justifies "throwing-up-one's-hands" and rejecting a fee award. *See* J-M Stage Two Op. Br. at 6-11. Relator responds by observing that J-M did actually succeed in persuading the Special Master that it had rebutted Relator's showing of reasonableness on many entries, evidenced by the fact that the Special Master recommended a 23% reduction of the non-block-billed fees. In any event, Relator also argues that J-M took the extreme position that the non-block-billed fees should be reduced by 55% and submitted expert witnesses who ultimately did not provide the back-up documentation necessary to assist the Special Master. And to the extent J-M argues the expert did not have time to do so, Relator argues that J-M had eight months to review each time entry line-by-line, work that the Special Master completed in seven weeks. *See* Relator State Two Resp. Br. at 3-4.

The law here is not at issue. A fee "applicant has an initial burden of production, under which it must produce satisfactory evidence establishing the reasonableness of the requested fee." *$28,000.00 in U.S. Currency*, 802 F.3d at 1105 (quotations omitted). This includes "detailed documentation of the hours worked." *Id*. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992). The Ninth Circuit has acknowledged that fee-shifting litigation can be "tedious business." *Moreno*, 534 F.3d at 1116. Indeed, "it may be difficult for the district court to identify the precise spot where a fee request is excessive." *Id*. That's where the losing party enters:

> But the burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices. If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut.

(33 of 78), Page 33 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 33 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 32 of 73   Page
ID #:161866

*Id.*

Here, the Court thanks the Special Master for addressing this issue and, though it agrees with the Special Master's conclusion, it will make independent findings. To be sure, Relator's Counsel's presentation of the instant Fees Petition left much to be desired. It is hard to understand why Relator's Counsel, given the vast scope of the Fees Petition and their incentive to recover as much as possible, submitted the Fees Petition without a manipulable, searchable spreadsheet, let alone without charts/tables/timelines summarizing the data. However poorly presented the data may have been, the Court has no trouble finding that Relator met his burden of production. That is why the Court denied J-M's motion to strike the Fees Petition and rejected the argument that it could not be meaningfully reviewed. Relator presented detailed documentation of the claimed hours, complete with contemporaneous narrative descriptions, and presented this information in an organized Fees Petition with supporting declarations. That the Fees Petition is expansive is the result of this being a lengthy, complicated case, not disorganization or failure to carry a burden. Indeed, the Fees R&R tracks the formatting of the Fees Petition. The Special Master was able to make specific observations about, and conduct a reasonableness assessment concerning, each stage of the litigation as defined in the Fees Petition. That is, the Fees Petition and the concomitant Fees Petition Spreadsheet provided sufficient information for the Special Master and this Court to perform a thorough review of Relator's time records – in the case of the Fees R&R, a comprehensive line-by-line review. The Court finds that Relator met his burden of production.

To the extent J-M's burden of persuasion argument can actually be reviewed as an objection, the Court finds that the Special Master gave appropriate weight to all the evidence and arguments submitted. Indeed, the Special Master noted that "[t]he defense's efforts to categorize the time by identified task was more insightful" and that he "found considerable value in Dr. Loughlin's lengthy spreadsheet." Fees R&R at 11. J-M also submitted the expert declaration from Mr. Jardini, which the Special Master reviewed, considered, and ultimately found too speculative and unsupported (discounting the entire bill by various percentages, attributing block-billed time to specific tasks, etc.). *Id.* at 12. All of this is to say that J-M vigorously presented evidence and expert opinions and made good arguments before the Special Master. The Special Master considered this material and ultimately was persuaded to reduce Relator's fees in many instances. The overall 23% reduction is significant. Each of the Special Master's reasonableness reductions is coded with a particularized finding and the details and summaries of each stage of the litigation

(34 of 78), Page 34 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 34 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 33 of 73    Page
ID #:161867

are presented in a comprehensive report. That Relator did not submit an expert of his own really has no import here; perhaps he would have persuaded the Special Master to find more time reasonable, perhaps not.

The Court will make two independent findings on *de novo* review. First, the Court has reviewed Mr. Jardini's declaration and also rejects it as too speculative with respect to dissecting the block-billed time. To be sure, the Court appreciates J-M's efforts here, as it too has long expressed a preference for a task-based analysis. But as the Court will discuss later, there simply is no non-speculative way of decoding the block-billed entries to discernable tasks.

Secondly, the Court has reviewed Dr. Loughlin's spreadsheet submitted to the Special Master and independently agrees with the Special Master's assessment. Dr. Loughlin's work aggregates billing entries that respond programmatically to certain search terms and compares the number of individuals Relator staffed and hours spent on certain tasks to the number of individuals and hours J-M's counsel at Bird Marella staffed on the same tasks. Again, the Court appreciates J-M's efforts here to compile some form of task-based analysis.

At the hearings, J-M's most determined objection was that the Special Master lost the forest for the trees and did not look at the overall excessive staffing which Dr. Loughlin's work demonstrated, and that this Court has not independently reviewed it. This Court would have found little evidentiary value in this, other than providing some atmospheric insight into overall staffing. The number of timekeepers staffed per task obviously demonstrated little, as ten attorneys and five attorneys could bill the same aggregate time per task. The number of hours staffed per task could demonstrate much more, if the data was fulsomely presented. And this is where the Court independently finds Dr. Loughlin's work to have little evidentiary value. J-M chose not provide Dr. Loughlin's backup work – *i.e*, the actual time entries that were aggregated into her summaries – because it did not want Relator to be able to copy from her work. Whatever J-M's strategy might have been here, without the backup data, there is no way for the Relator to rebut, let alone the Special Master or this Court to review, what entries actually responded to Dr. Loughlin's search terms. The Court can therefore not determine the correctness of her work or the soundness of her methodology. Further still, this Court is acutely aware that J-M has employed several law firms over the course of this lengthy litigation and has zealously litigated at every turn. So, to choose only certain tasks from certain law firms during certain times of the litigation does not provide a complete picture of J-M's comparison staffing for the case writ large. Nor does J-

(35 of 78), Page 35 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 35 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 34 of 73   Page
ID #:161868

M include a comparison of the fees actually charged, which inhibits any review of what J-M was paying for its defense as compared to what Relator's Counsel was spending for its prosecution. Finally, J-M cannot credibly argue that its evidence had no impact on the Special Master or this Court, as the Special Master found, and this Court affirms, a significant 23% reduction in the reasonableness of the non-block billed time. In essence, J-M contends that the Special Master and this Court erred by not accepting its expert's conclusions in full. But that, of course, is not how evidence or *de novo* review works. The Court finds that the Special Master considered J-M's aptly made arguments and evidence and has itself reviewed the record and makes the independent findings described herein.

For all these reasons, the Court once again finds no basis to "throw-up-one's hands" and deny the Fees Petition all together. Though the work in reviewing the Fees Petition has been tedious (an issue the court will address in discussion of block-billing and the supplemental fees-on-fees petition), the parties have worked hard to perform the work. To the extent J-M objects that Relator has failed to carry his burden of production and persuasion, the Court **OVERRULES** the objection.

ii.   Task-Based Analysis

J-M argues that comparing the Special Master's recommendation to J-M's task-based fee expert shows that the Special Master only applied "fairly modest discounts, like those typically seen in routine fee cases, even though the time entries here show how the case was overstaffed and the work performed inefficiently." J-M Stage Two Op. Br. at 12. J-M identifies ten discrete tasks. In each instance, the Special Mater discounted Relator's claimed fees. J-M generally objects that the applied discount is insufficient. *Id*.

As a threshold matter, the Court observes that a task-based analysis is precisely the type of analysis for which this Court has long expressed a preference. As explained above, the Court appreciates J-M's efforts in setting out to conduct the analysis under this framework and agrees with the Special Master that Dr. Loughlin's work is insightful to some degree here. As the Court will later discuss with respect to block-billing, however, there is no rule of law requiring a task-based analysis, so the Court cannot accept here any categorical insistence that Relator's non-block-billed fees are to be discounted because they were not presented in task-based formatting.

On the merits of J-M's objections, the Court has reviewed the new declaration of J-M's expert Dr. Loughlin, which summarizes the Special Master's reductions to the non-block-billed

(36 of 78), Page 36 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 36 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 35 of 73   Page
ID #:161869

entries by task.  In essence, J-M argues that, based on Dr. Loughlin's summary of search terms, the Special Master did not apply a large enough discount for each task.  Though J-M complains that the Special Master applied only a "modest discount," the Court finds unavailing that, by way of just a few examples, a 32.1% discount for amended complaints, 32.2% discount for travel, or a 32.2% discount for internal meetings/conferences is necessarily modest.  These are significant reductions.  Nor does J-M cite any authority for the proposition that these discounts are modest in comparison to "routine fee cases."  J-M Stage Two Op. Br. at 12.  And the Special Master specifically noted that he gave weight to Dr. Loughlin's work.  As fulsomely discussed just above, this Court finds Dr. Loughlin's work insightful but the actual evidentiary value of its conclusions somewhat mixed.  But even if the Court were inclined to further reduce these tasks, J-M does not identify the specific entries in order to do so.  In the end, the Special Master considered Dr. Loughlin's (quite helpful) analysis and discounted the fees in *every* category of tasks J-M now identifies.  In essence, J-M seeks to negotiate a higher discount.  That is not a properly reviewable objection and is nonetheless unwarranted based on the record.

For these reasons, the Court **OVERRULES** J-M's objection.

### iii. Bird Comparison

J-M argues the Fees R&R incorrectly rejects the comparison J-M sets forth of its hours (billed by the Bird Marilla firm) to those submitted by Relator's Counsel.  Though J-M does not propose how this objection would seek to revise the Fees R&R, it argues that the Special Master's findings related to the asymmetry of the litigation burdens and that Relator spent twice as much at trial is not unreasonable on its face are unsupported by any evidence.  J-M Stage Two Op. Br. at 13-15.  Relator responds by noting that the Special Master did in fact consider the comparison J-M set forth, but that J-M now complains its evidence moved the Special Master in the opposite direction than it had hoped.  Relator Stage Two Resp. Br. at 6.

The Court has reviewed the record J-M made before the Special Master with respect to the staffing comparisons.  The Court finds that the Special Master *did* consider J-M's evidence comparing its bills to Relator's.  It is worth repeating the Special Master's assessment:

> I closely reviewed the various submissions regarding how the Bird Marella firm billed for its time in the defense of the action.  Those bills were helpful in confirming some points that I (as an outsider to the litigation) wasn't fully aware of.  Frankly, the size of the Bird bills made clear to me how large, how complex, and how closely fought this lawsuit was.  Aspects of the Bird Marella bills

34

(37 of 78), Page 37 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 37 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 36 of 73   Page
ID #:161870

(which, as the defense rightly reminds me, were actually presented to a client for payment) were pretty eye-popping.  I realize that J-M wanted me to take away from these materials that the Relator's bills were even more eye-popping than the defense's own.  Perhaps.

But the size and scope of the Bird Marella bills caused me to recalibrate where the reasonableness line really was.  The Loughlin declaration and the Bird bills drove home the sheer amount of litigation there was: the number of depositions, discovery motions, substantive motions, trial and evidentiary motions, etc.  It also reminded me (and supported some of Relator's own assertions) regarding the asymmetry of the litigation.  There were many legal tasks in my review where the Relator's lawyers likely did have to spend more time on issues than their adversaries on the defense.  In that circumstance, a higher bill from the Relator becomes more reasonable.  And if I concluded that the amount of time spent on a task was unreasonable on its face, I gained some, but little, value by confirming that observation by reviewing the parallel bill from the Bird firm.

Fees R&R at 13-14.  The Special Master also noted that J-M declined to provide legal bills from Stage 11 (appeal), an area of the litigation where the comparison with Relator's fees would have been more apt.  This, the Special Master found, "somewhat undercut" the evidentiary significance of the Bird bills.  Fees R&R at 14.

In the end, the Court finds that J-M cannot credibly argue that the Special Master failed to consider its comparison bills.  The Special Master did consider them, he just did not find it as persuasive as J-M had hoped.  That the Special Master gleaned from J-M's own evidence the expansive scope of this contentious litigation, as well as the litigation burdens Relator needed to staff, does not provide a supportable objection to overturn the Special Master's work here.  The Court expansively discussed above Dr. Loughlin's evidence, J-M arguments before the Special Master and this Court concerning her comparison, and the mixed evidentiary value it holds.  The Court has already expressed its independent findings related to Dr. Loughlin's comparison work, which it again adopts here.

For these reasons, the Court **OVERRULES** J-M's objection.

iv.  <u>Other Objections</u>

Under a heading styled as "Other Assessments Proffered by J-M Were Ignored," J-M sets out a list of general disagreements with the Fees R&R.  The Court will look to each in turn.  J-M first contends that the Special Master did not make enough reductions for top-heavy staffing, overstaffing, excessive fact depositions, and large amount of document review.  J-M Stage Two

(38 of 78), Page 38 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 38 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 37 of 73   Page
ID #:161871

Op. Br. at 17-20.  The Court does not agree with these generalities.  The R&R is replete with specific analysis of top-heavy staffing, overstaffing, and excessive billing.  Indeed, the Special Master reduced the non-block-billed entries by $4,777,808 for top-staffed, overstaffed/duplicative, and excessive work (codes "D," "T," and "E" on the Special Master Spreadsheet).  That J-M thinks the Special Master should have applied further reductions does not support its contention that the Special Master "ignored" its argument.  Relator aptly notes, too, that the discovery into non-exemplar plaintiffs J-M now complains is not compensable is discovery it insisted on taking in 2012 to ensure the Exemplar Plaintiffs were representative.  *See* Docket No. 591 at 14-15.  The Court therefore finds that the Special Master did not ignore J-M's arguments of top-heavy staffing, overstaffing, and excessive billing.

Next, J-M argues that the Special Master improperly included time that was not spent obtaining and defending the Phase 1 liability verdict and penalty award.  To support this contention, J-M submits a declaration from Dr. Loughlin summarizing the non-block-billed entries (and the Special Master's adjustments) that meet certain search results.  In this Court's review, neither J-M's brief nor the supporting declaration explains why an entire billing entry is not compensable just because it contains one of these words, nor does it provide the actual billing entries to be reviewed.  By way of just one example, the Special Master permitted 100% recovery for a 0.2-hour billing entry from Mary Inman for reviewing emails in 2011 in preparation for a hearing on damages not being an element of FCA liability.  *See* Appendix, Ex. 5, Special Master Fees Spreadsheet (Unique ID #PC-001200) (under seal).  This was during the early stages of the case (in the Fees Petition, Stage Two – Pleadings and Preliminary Fact Investigation) and is specifically related to Relator's liability case, not the Phase Two damages trial.  Perhaps there are some examples that fit J-M's bill, but with no specific objection made, the Court finds that just because a billing entry responds programmatically to certain search terms does not by itself render the time unreasonable.

Next, J-M argues that the Special Master "ignored" the expert opinions it proffered from Mr. Jardini regarding the overbilling of certain depositions.  J-M Stage Two Op. Br. at 16-17.  The Court has reviewed this passage of Mr. Jardini's declaration as well as the summary of the billing entries J-M submits with its current brief.  The Court observes that the Special Master reduced the time for *both* John Orkish and Barry Lin's deposition.  In the case of the Barry Lin's deposition, nearly every entry was reduced in whole or in part.  The Special Master clearly analyzed these

(39 of 78), Page 39 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 39 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 38 of 73   Page
ID #:161872

billing entries, evidenced by the considerable reductions he applied.  The Court therefore finds that
the Special Master did not ignore J-M's arguments with respect to overstaffed depositions.

J-M also argues that the Special Master failed to disallow misbilled time, pointing to certain
time entries that are clearly unrelated to this case.  Relator Stage Twp Op. Br. at 18; Docket No.
3221-2, Ex. N, at 43.  As best the Court can tell, this argument was not mentioned in any of J-M's
briefs before the Special Master but instead was included on page 43 of a 178-page declaration.
Nonetheless, the Court finds in its independent review that this time is not compensable.  In the
Fees Petition Spreadsheet, the Court has coded these seven misbilled entries with the code "M"
and applied a 0% compensable amount.  The result is a reduction to the lodestar of $22,036.[27]  *See*
Appendix, Ex. 12, Misbilled Time (under seal).  Note, however, that only two of these entries were
non-block-billed entries, so the Special Master's recommendation is reduced by just $4,108.  *Id*.
The Court will observe atmospherically that this not-insignificant error lends credence to J-M's
argument that Relator's Counsel haphazardly submitted the Fees Petition.

For these reasons, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** J-M's
objections.

### e.   *Summary*

The Court has read the entirety of the Special Master's Fees R&R.  The Court has also
reviewed the Special Master Spreadsheet.  The Court has considered all of the parties' objections
to the Fees R&R, as just analyzed above.  As explained in the foregoing discussion, the Court
largely agrees with the Special Master and accepts his report and recommendation except for:
(1) adding $3,325 in compensable time found as a result of a spreadsheet error; (2) omitting $4,108
in misbilled time from the non-block-billed entries (and $17,928 from the block-billed entries);
and (3) adding the independent findings delineated throughout the foregoing discussion.  The
Court has interlineated the Special Master's recommendations into the Fees Petition Spreadsheet,
as well as the adjustments for misbilled time.  *See* Appendix, Ex. 13, Non-Block-Billed Entries
(under seal).

To summarize, there are 18,187 non-block-billed entries in the Fees Petition, representing
44,162 hours and $24,985,096 in attorney fees.  *See id*.  After accepting the Special Master's Fees
R&R and making the adjustment for misbilled time just described, the Court finds 34,251 hours

---

[27] This amount is different than that identified in J-M's brief before the Special Master because it applies the
court-approved reasonable hourly rates.

and $19,197,645 in non-block-billed attorney fees compensable. *See id.* This results in an overall reduction of $5,787,451 to the lodestar. *See id.*

**Table Four**
*Tentative Lodestar Calculation After Determining the Reasonableness of Non-Block-Billed Fees*

|  | **Hours** | **Fees** |
|---|---|---|
| Fees Petition as Submitted | 118,202 | $85,320,405 |
| Fees Petition Calculated Using Court-Approved Reasonable Hourly Rates | 118,202 | $70,928,073 |
| Reduction for Unreasonable Non-Block-Billed Time | -9,912 | -$5,787,451 |
| Tentative Lodestar Calculation | 108,290 | $65,140,622 |

3. Reasonableness of Block-Billed Fees

Having determined the reasonableness of the non-block-billed entries, the Court turns now to determining the reasonableness of the block-billed entries.

a. Scope of the Block-Billing Problem

Prefatory remarks are necessary here. The degree to which Relator's Counsel's decision to block-bill much of their time has injected disorder into this Fees Petition cannot be overstated. An extraordinary amount of time and resources have been spent attempting to decipher the reasonableness of the vast amount of block-billed entries in this Fees Petition. The Fees Petition contains 30,419 separate entries. Despite this expansive trove of data, the Fees Petition did not contain any spreadsheets presenting the billing data, nor any charts/tables summarizing it. Instead, it contained only printed documents of the time entries and various declarations supporting them, totaling more than 2,300 pages split between 65 separate exhibits. *See* Docket No. 3065 (under seal). In July 2024, the Court denied J-M's motion to strike the Fees Petition in its entirety, rejecting the argument that the Fees Petition could not be meaningfully reviewed, even if the task of doing so would be tedious. But since the beginning, this Court has maintained that the Fees Petition needed to be presented in spreadsheet format such that the billing data could be sorted, searched, and summarized in discernable ways, which was particularly important given the vast degree of block-billing.

(41 of 78), Page 41 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 41 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 40 of 73    Page
ID #:161874

After numerous status conferences regarding block-billing and other preliminary issues, it became clear that, given the very nature of block-billing, there would be no non-speculative way to cull from the trove of block-billed entries a specific list of litigation tasks and associated hours spent performing them. Afterwards, the Court created a case management order whereby the reasonableness of the block-billed entries would be addressed through a percentage reduction and the non-block-billed entries would be assessed on their own. That is because district courts can apply a percentage reduction to block-billed entries, but any such reduction must be applied to the block-billed entries specifically, not across the board to the entire petition. *Welch*, 480 F.3d at 948.

The first step in this process required determining which time entries were actually block-billed. This required the parties to assess line-by-line *each* of the 30,419 billing entries. The Court then reviewed line-by-line *each* of the 5,316 billing entries for which the parties disagreed as to the block-billing designation. The result of this tedious exercise was a finding that 12,232 separate billing entries in the Fees Petition are block-billed. *See* Appendix, Ex. 14, Block-Billed Entries (under seal). The block-billed entries alone span 423 printed pages. *Id*. Numerically, there are fewer block-billed entries in the Fees Petition than non-block-billed entries. *See* Appendix, Ex. 15, Block-Billing Summary (under seal). Unsurprisingly, however, given that block-billing by its nature leads to fewer billing entries, there are far more block-billed time entries in the Fees Petition than non-block-billed time. *Id*. Staggeringly, 63% of the entire Fees Petition is block-billed, representing 74,039 hours of block-billed time, totaling $45,942,977 worth of block-billed fees. *Id*. The parties have since set out to recommend how to approach this time, informed in part by the Special Master's assessment as to the reasonableness of the non-block-billed time.

### b. *Withdrawn Block-billed Fees*

With this in mind, it should first be noted that Relator's Counsel has agreed to withdraw certain of its block-billed entries totaling $265,401.30. Relator Stage Two Resp. Br. at 12 n.3. In August 2021, during the first pre-appeal stage of the fee litigation, the extent of block-billing and all of its concomitant issues began to emerge. At that point, already appreciating the scope of the issue, the Court ordered Relator's Counsel to refrain from block-billing for the remainder of the case. And the Court reiterated that ruling in July 2024. *See* MTS Order at 9-10. J-M subsequently challenged 126 block-billed entries submitted in the Fees Petition after this August 2021 order, totaling 298.95 hours and $265,401 in fees. *See* J-M Stage Two Op. Br. at 22; Declaration of Paul

(42 of 78), Page 42 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 42 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 41 of 73   Page
ID #:161875

Chan, Docket No. 3244, ¶ 10, Ex. 8.  In the face of this challenge, Relator has chosen to withdraw its request for those fees.  Therefore, the Court will reduce by 100% the specifically identified entries which J-M has challenged, and Relator has chosen to withdraw.  In the Fees Petition Spreadsheet, the Court has coded these entries with the code "W" and applied a 0% compensable amount.  The result is a reduction to the lodestar of $265,401. *See* Appendix, Ex. 16, Withdrawn Block-Billed Fees (under seal).

### c.  *Percentage Reduction to Remaining Block-Billed Fees*

The Court turns now to assessing the reasonableness of the remaining block-billed fees. Relator argues that the use of block-billing is routine and permitted under Ninth Circuit caselaw so any assertion that it is categorically prohibited, presumptively unreasonable, or somehow punishable must be rejected.  Relator contends that J-M's insistence that it receive a fees petition presented in a granular, task-based format is simply not founded in the caselaw.  Any reduction, Relator argues, should therefore be a minimal 10% "haircut" but *at most* can be no more than 23%, extrapolating the Special Master's reasonableness assessment to the block-billed entries.  Relator Stage Two Open. Br. at 10-18; Relator Stage Two Resp. Br. at 9-12.

J-M argues that Relator has wholesale defaulted in substantiating the reasonableness of the block-billed entries and therefore all block-billed time must be discounted by 100%.  J-M contends that Relator has failed to carry its burden here because: (1) Relator has unwaveringly refused to engage in a task-based analysis; (2) the Special Master found the block-billed entries useless for determining the reasonableness of the non-block-billed entries; and (3) the Special Master rejected J-M's fee expert's attempt to unpack the block-billed fees as too speculative.  In addition, because Relator has not identified any task that was exclusively block-billed, J-M argues that the Fees R&R dictates the maximum recovery in this case, meaning that *no less* than a 100% reduction must be applied to the block-billed fees.[28]  J-M Stage Two Op. Br. at 20-22; J-M Stage Two Resp. Br. at 10-16.

In short, the Court finds that Relator wins on the law but loses on the facts.  Fundamentally,

---

[28] J-M also challenges Relator's new attempt to redefine the definition of block-billing and to apply its own, more narrow definition of block-billing.  Relator attempts to minimize the block-billing issue now by arguing that there are only 551 block-billed entries where an entire day's work was described in broad strokes.  Relator Op. Br. at 12.  The Court agrees with J-M and squarely rejects Relator's much-too-late attempt to redefine or minimize the impact of block-billing, which is inconsistent with the definition the parties expressly agreed to and served as the foundation for the block-billing review.

(43 of 78), Page 43 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 43 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 42 of 73   Page
ID #:161876

Relator is correct that block-billing is not barred under applicable precedent – though it certainly is disfavored. "While block billing creates some impediments to the analysis of attorney fee bills, the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees." *Trulock v. Hotel Victorville*, 92 F. App'x. 433, 434 (9th Cir. 2004) (rejecting the argument that "reliance on block billing in awarding attorney fees deprives the party ordered to pay those fees of property without due process by denying that party the opportunity to test, explain, or refute the evidence"). And Relator correctly cites several district court cases rejecting challenges to the block-billing format. *See e.g.*, *Roadrunner Transp. Servs., Inc. v. Tarwater*, No. 10-cv-1534-AGM-(LGx), 2013 WL 12170492, at *2 (C.D. Cal. Dec. 9, 2013), *aff'd*, 642 F. App'x. 759 (9th Cir. 2016) ("Attorneys do not have to make one billing entry per task for a court to see where time was spent. The Court is not persuaded that reducing fees for purported block-billing is appropriate here."); *Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1030 (C.D. Cal. 2012) (finding that the challenged block-billed entries were "sufficiently detailed to give the Court an accurate sense of the tasks performed during each billed period" and reducing them by only 5% to account for the time inflation inherent in block-billing). Therefore, the Court finds once more that Relator's block-billed time will not be excluded or reduced solely by reason of it being block-billed. The Court rejects once again J-M's insistence that it has a fundamental right to a task-based fees petition or that the failure to provide one (even if that would be this Court's preference) is a "default."

That said, the cases Relator relies upon simply cannot carry the weight he places upon them. First, the cases cited for the proposition that block-billing is routinely permitted were addressing fees petitions that were mere fractions of the one at bar. For example, Relator quotes *Roadrunner* for the proposition that "[a]ttorneys do not have to make one billing entry per task for a court to see where time was spent." 2013 WL 12170492, at *2. Sure, this Court generally agrees, but *Roadrunner* is not helpful here. The total fees award in that case was just $325,000 and the printed spreadsheet containing all of the billing entries was just 54 pages long. *Roadrunner*, Docket No. 144-5. To be sure, this judicial officer regularly reviews fees petitions, some of which contain block-billed entries. While the existence of a relatively small amount of block-billed time in an otherwise manageable fees petition (like the cases Relator relies upon) poses little impediment to a reasonableness review, those facts are simply inapplicable to the task at hand. Relator has not cited any case that even comes close to endorsing block-billing in the magnitude of a fees petition like the one he presents here.

(44 of 78), Page 44 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 44 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 43 of 73    Page
ID #:161877

Second, Relator's Counsel cites *Moreno* for the proposition that their fees are deserving of billing judgement. 534 F.3d at 1112 ("It must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee. . . . By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker."). Again, this is true, but not of much help here. To be sure, J-M has never challenged the veracity of Relator's fees. They were submitted by members of the bar and supported by sworn declarations. The Court has no independent basis to question that the fees submitted in this Fees Petition were actually incurred for work in this case or that the talented attorneys who represented Relator exercised billing judgment in the fees they incurred and submitted.

But to the extent Relator's Counsel contends that J-M's (and the Court's) inability to truly test and explore these fees is somehow misplaced because the fees should simply be granted deference is wholly unavailing. Indeed, the Ninth Circuit has indicated that district courts *must* specifically probe the reasonableness of block-billed time entries. *See Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 F. App'x. 238, 245 (9th Cir. 2021) ("[I]t was improper for the district court to grant in full an attorneys' fees request that was based largely on block billing where there was significant overlap in time billed for the same work between attorneys and it was difficult to ascertain how much time was spent on specific tasks."); *see also Esebag v. Whaley*, No. 18-cv-08446-JAK-(RAOx), 2023 WL 3476840, at *3 (C.D. Cal. May 2, 2023) ("[D]istrict courts may not uncritically accept a fee request, but must review the time billed and assess whether it is reasonable in light of the work performed and the context of the case." (quotation marks and citation omitted)). Relator's overreliance on the generality that his fees are deserving of deference, especially given the extraordinary nature of block-billing in this case, would essentially flip the burden and turn fee-shifting litigation into a haphazard negotiation.

With all this said, the Court finds the specific facts of this Fees Petition at odds with the general legal principles Relator cites. After carefully reviewing the Fees Petition for many months and considering the vociferous arguments made from both sides with regard to block-billing, the Court is compelled to find that Relator's Counsel's vast use of block-billing is fundamentally inconsistent with the lodestar method. There is complete agreement among the parties, the Court, and the Special Master that it is impossible to break down the 74,039 hours and $45,942,977 in

(45 of 78), Page 45 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 45 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 44 of 73    Page
ID #:161878

block-billed time to discernible tasks.  Attempting to travel back in time over two decades of litigation to determine how much time was spent on each task in a block-billed entry would be speculative and unreliable – and no expert witness can recreate history either (J-M tried).  The best that could possibly be done is to do what this Court has done: load the entries into a manageable database, search and sort them in discrete ways, and read the entries line-by-line.  But this provides only a sense of the work performed, *at best* creating a list of tasks and the attorneys who performed the work along the way.  Nothing allows J-M to challenge, however, let alone a neutral judge or Special Master to discern, whether that time was actually *reasonable*.  It would just be a guess. *See Yeager v. Bowlin*, No. 2:08-cv-102-WBS-JFM, 2010 WL 1689225, at *1-2 (E.D. Cal. Apr. 26, 2010) ("An excessive amount of block billing thereby forces the court to take a 'shot in the dark' and guess whether the hours expended were reasonable, which is precisely the opposite of the methodical calculations the lodestar method requires.").

The lodestar method has two components: math and reasonableness.  Block-billing poses no impediment to the first mathematical step.  No doubt, the Court can multiply the large number of hours worked in this case by the reasonable hourly rates.  The critical issue is reasonableness. As another district court has noted, "[b]lock billing makes it virtually impossible for a court to comply with its requirement to give a clear, reasoned explanation for any fee reductions because those reductions would ultimately be nothing more than guesswork based on an imprecise billing statement."  *Id.* at 2.  Additionally, though J-M has no fundamental right to a task-based fees petition, the Court remains sympathetic to the argument that the vast scope of block-billing in this case inhibits the meaningfulness of its review and challenges.  There is no serious debate in this case that the billing narratives describe the work Relator's Counsel performed.  The inescapable problem with Relator's Counsel's decision to block-bill is therefore not the *form* of the narrative, but that the form of the narrative renders impossible any meaningful review of the *substance* of the work.

In essence, Relator's Counsel delivered J-M a staggering $83 million bill for reimbursement of attorney fees, nearly two-thirds of which was block-billed.  Yet, Relator's Counsel could not, if asked, explain how much time was spent on any particular task.  In addition to this being inconstant with the spirit and precise commands of the lodestar method, the Court has trouble believing that any fee-paying client would actually accept such a bill the in the competitive marketplace for legal services – let alone a fierce adversary in fee-shifting litigation. *See The State*

(46 of 78), Page 46 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 46 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 45 of 73    Page
ID #:161879

Bar of California Committee on Mandatory Fee Arbitration, Arbitration Advisory 03–01, at 3 (2003) (the "State Bar Report") ("Many sophisticated users of legal services and many courts specifically prohibit block billing, and in evaluating the appropriateness of charges for legal services it may be appropriate – even essential in some cases – to write off time and fees to account for this practice."); *Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's adversary pursuant to statutory authority." (emphasis in original)).

Returning to principles, the Court has frequently acknowledged and repeats again today that there is no rule of law in this circuit prohibiting block-billing. Perhaps there should be. But applying the law as it stands, the Court rejects J-M's argument that Relator's Counsel's block-billed time should be reduced by 100%. This finding is unchanged by J-M's new argument that none of the block-billed time is recoverable because the Special Master found some of the non-block-billed time unrecoverable. This argument is a casuistry. It is clever, in that it is technically correct that neither the Relator nor the Special Master identified any particular task that was exclusively block-billed and that the Special Master found some of the non-block-billed time itself unreasonable. But it is unsound, in that the process of assessing the reasonableness of the block-billed and non-block-billed time separately, however inexact such approach may be, is a creature of caselaw – and the Special Master was never tasked with assessing the overall reasonableness of the *entire* Fees Petition. Anyways, when applied, J-M's argument contends that 84,196 of the claimed hours (23% of the 44,162 non-block-billed time and 100% of the 74,039 block-billed hours) are completely unreasonable. J-M would therefore have the Court find that 71.2% of *all* the fees Relator Counsel's incurred over two decades of litigation were unreasonable. This unserious position would have been better left unstated.

Instead, and in light of all the foregoing, the Court will reduce all of the remaining block-billed hours by 33%. *See De Jesus Ortega Melendres v. Arpaio*, No. 13-16285, 2017 WL 10808812, at *7 (9th Cir. Mar. 2, 2017) ("The time requested should be reduced if block billing makes it impossible to evaluate the reasonableness of the time."). The Ninth Circuit has cited approvingly an advisory opinion from the California State Bar that found block-billing "hides accountability and may increase time by 10% to 30%." State Bar Report at 3; *see also Welch*, 480 F.3d at 948 (citing approvingly the district court's reliance on the State Bar Report and stating that "[w]e do not quarrel with the district court's authority to reduce hours that are billed in block

(47 of 78), Page 47 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 47 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 46 of 73    Page
ID #:161880

format"); *Lahiri*, 606 F.3d at 1223 (citing approvingly *Welch* and the State Bar Report).

Relator's contention that only a small "haircut" should be applied is rejected. The Court acknowledges that other courts often apply smaller reductions to account for block-billing. *See, e.g.*, *Pierce*, 905 F.Supp.2d at 1031 (5% reduction); *Synagro Techs., Inc. v. GMP Haw., Inc.*, No. 04-cv-0509-SPK-LEK, 2007 WL 851271, at *13 (D. Haw. Mar. 15, 2007) (5% reduction). *Robinson v. Plourde*, 717 F.Supp.2d 1092, 1100 (D. Haw. 2010) (15% reduction); *Welch*, 480 F.3d at 948 (20% reduction). But the State Bar Report warns that "[t]he larger the 'block', the more care should be exercised." *Id.* The Court therefore finds that going slightly above the high range of the State Bar Report is an appropriate reduction here given the extraordinary use of block-billing in this case. Relatedly, the Court also finds that a 33% reduction is warranted because the vast extent of block-billing has rendered impossible any attempt at a precise reasonableness review of 63% of the Fees Petition. Most importantly, however, the Court does not arrive at this decision in a vacuum, as there is actual evidence in this case from the Special Master's review that the non-block-billed entries are themselves unreasonable by at least by 23%. Because a 10-30% adjustment to block-billed entries has been cited approvingly in the *absence* of any other reasonableness review, there is ever the more reason to adopt a high-end 33% reduction here.

The Court finds unavailing Relator's contention that the 23% figure is the ceiling, as well as J-M's contention that it is the floor. The Special Master's review included some aspects subsumed into the State Bar Report (such as examining staffing and measuring the work produced by the hours claimed), but not all the factors that would be considered in a thorough reasonableness review. *See generally* State Bar Report. The 33% reduction, which is slightly higher than that endorsed in fee litigation much smaller than this, can constitute the "rough justice" the Supreme Court has identified as the "essential goal" in fee-shifting litigation, as opposed to the achievement of "auditing perfection." *Fox*, 563 U.S. at 838. Further, the Supreme Court delineated that "the determination of fees 'should not result in a second major litigation'" and that, in the process, "trial courts may take into account their overall sense of a suit . . . ." *Id.* (quoting in part *Hensley*, 461 U.S. at 437). Moreover, the Ninth Circuit has specifically affirmed a district court's discretion to reduce block-billed time by 30%, and this Court, after careful review, expressly finds in this exceptional case that a small additional reduction is warranted here. *See Lahiri*, 606 F.3d at 1222-23 ("The district court identified attorneys and paralegals who were primarily responsible for block billing, and reduced 80% of their billable hours by 30%. This was permissible and not an abuse

(48 of 78), Page 48 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 48 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 47 of 73   Page
ID #:161881

of discretion.").

    *d.   Summary of Reasonableness of Block-Billed Fees*

For all of the foregoing reasons, the Court finds that it is appropriate in this case to apply a 33% reduction to all of the remaining block-billed entries. Using the reduction code "BB", the Court has carefully applied a 67% compensable rate to all of the remaining block-billed entries. *See* Appendix, Ex. 17, Block-Billing Reduction (under seal).

To summarize, there are 12,232 separate block-billed entries in this Fees Petition, representing 74,039 hours and $45,942,977 in attorney fees. *See* Appendix, Ex. 15, Block-Billing Summary (under seal). Relator withdrew 299 hours and $265,401 of these fees. *See* Appendix, Ex. 16, Withdrawn Block-Billed Time (under seal). Additionally, as discussed *supra*, 20 hours and $17,928 of the block-billed time is omitted as being misbilled. *See* Appendix, Ex. 12, Misbilled Time (under seal). The remaining time is reduced by 33%. *See* Appendix, Ex. 17, Block-Billing Reduction (under seal). This results in a finding that Relator's Counsel's remaining block-billed time must be reduced by $15,067,684, resulting in a combined finding of 49,393 compensable block-billed hours and $30,591,964 of compensable block-billed time. *See id*.

**Table Five**
*Tentative Lodestar Calculation After Determining the Reasonableness of Both Block-Billed and Non-Block-Billed Fees*

|  | **Hours** | **Fees** |
|---|---|---|
| Fees Petition as Submitted | 118,202 | $85,320,405 |
| Fees Petition Calculated Using Court-Approved Reasonable Hourly Rates | 118,202 | $70,928,073 |
| Reduction for Unreasonable Non-Block-Billed Time | -9,912 | -$5,787,451 |
| Tentative Lodestar Calculation | 108,290 | $65,140,622 |
| Withdrawn Block-Billed Time | -299 | -$265,401 |
| Omitted Misbilled Block-Billed Time | -20 | -$17,928 |
| 33% Reduction to Remaining Block-Billed Time | -24,328 | -$15,067,684 |

(49 of 78), Page 49 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 49 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 48 of 73    Page
ID #:161882

| Tentative Lodestar Calculation | 83,643 | $49,789,609 |
|---|---|---|

### 4. Supplemental Petition for Fees-on-Fees

In his supplement to the Fees Petition, Relator submits an additional 1,360 billing entries totaling 2,107 hours and $1,594,425 in fees (calculated at the court-approved reasonable hourly rates) for fees-on-fees incurred from March 21, 2024 (just before filing the Fees Petition) through January 27, 2025. *See* Fees Supp.; Sher Decl., Ex. C, Docket No. 3234 (manually filed). Relator contends that all of these fees are part of Stage 11 of the Fees Petition (post-appeal fees-on-fees) and are fully recoverable. Fees Petition Supp. at 2. J-M argues that these fees should be rejected entirely because the supplement does not even endeavor to address or analyze what work was done, much less demonstrate the reasonableness of these hours. J-M also specifically challenges $342,862 associated with the block-billing issue, notes the costs it has had to incur because of Relator's refusal to attempt a task-based analysis, and specifically challenges as not compensable the time spent litigating the Formosa offset issue. In short, J-M contends that the "pervasive impact of a deficient Petition" necessitated much of these fees-on-fees which warrants a total or near total reduction of the fees. Fees Supp. Op. at 6-9.

Here, the Court finds that most of J-M's challenges to the supplemental fees are valid and aptly raised. First, and perhaps most importantly, the Court largely agrees that Relator's uninspiring presentation of this extraordinarily large Fees Petition required the Court (and the parties) to expend a remarkable amount of resources to determine the reasonableness of the requested fees. Second, and relatedly, as the Special Master also noted, fee litigation is a commonplace aspect of FCA cases and all of Relator's Counsel (as they pointed out when briefing their hourly rates) are top-rank practitioners in that field. While this Fees Petition is by no means the ordinary fee request, Relator's Counsel no doubt could have done a better job over the years in preparing for and ultimately presenting this petition – as the recovery of attorney fees was always at issue in this case, so long as they prevailed. Third, J-M has specifically identified $342,862 (or 21.5%) of the supplemental fees petition as time entries dealing directly with the block-billing issue. Although it has been determined that block-billed entries will be compensated, Relator's Counsel's decision to block-bill their time injected significant disorder and genuine issues into determining the reasonableness of the Fees Petition. The Court finds it unreasonable to stick J-M with the entirety of Relator's Counsel's bill for resolving an issue they themselves

(50 of 78), Page 50 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 50 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 49 of 73    Page
ID #:161883

imposed. Though, the Court acknowledges Relator's Counsel's contention that this time would have certainly been incurred anyways because, had they not block-billed, there would have been exponentially more entries to review. Fourth, the Court also agrees that Relator's efforts in submitting the supplemental fees petition were cursory. The supplemental petition is just two pages long. Though it has supporting declarations (and, informed by the first go-round, a helpful associated spreadsheet), it makes no attempt to actually explain, categorize, or justify the reasonableness of the requested time. To the extent Relator seeks to simply add these supplemental fees to its Stage 11 petition, the Court notes that the Special Master reduced the Stage 11 non-block-billed hours by 24%. *See* Fees R&R at 41-42.

The Court does not quibble with Relator's contentions, however, that a reasonable amount of these fees-on-fees are recoverable. The Court specifically agrees with Relator that the time spent litigating the Formosa offset is typical fee litigation, not Formosa-related time. And obviously, the time spent at court hearings (some, like the motion to strike and those related to an insistence on task-based formatting or sampling block-billing, were directly necessitated by J-M) is recoverable. On reply, instead of a line-by-line review of the supplemental fees, Relator consents to a reduction of the fees-on-fees time by the percentage applied to reduce time before Relator filed the Fees Petition. Fees Petition Supp. Rep. at 10.

"A district court may apply a similar percentage used to reduce the merits fees where the same explanation supports a similar reduction to the fees-on-fees request." *Natl. Rifle Assn. of Am. v. City of Los Angeles*, No. 2:19-cv-03212-SVW-(GJSx), 2020 WL 13678741, at *14 (C.D. Cal. Oct. 30, 2020); *Schwarz v. Sec. of Health & Human Services*, 73 F.3d 895, 909 (9th Cir. 1995) ("[A] district court can apply a percentage formula to reduce the fees-on-fees requested without providing an additional explanation for its actions, since it already has provided a concise but clear explanation of its reasons for the merits fee award and that same explanation underlies and supports the decision to award fee-on-fees in the same (or, as here, about the same) percentage." (quotations and brackets omitted)).

The Court will therefore reduce Relator's supplemental fees request by an overall percentage of 35%. This percentage is specifically informed by: (1) the reality, of which this Court is intimately aware, that much of the burden incurred in this fees-on-fees stage was necessitated by Relator's decades-long billing disorganization; (2) specifically, the immense burden imposed because of vast amount of block-billing; (3) the lackluster presentation of the fees petition that

(51 of 78), Page 51 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 51 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 50 of 73    Page
ID #:161884

exacerbated fees in this fees-on-fees stage; (4) that Relator's other Stage 11 non-block-billed entries were alone found by the Special Master to be unreasonable by at least 24%; and (5) that the supplemental fees petition itself contains many of the same billing issues as the merits Fees Petition – *i.e.*, cursory justifications. The 35% reduction is slightly higher than the 29.8% by which the overall Fees Petition has been reduced, but the Court finds that the additional 5% reduction is fair and reasonable in light of all the foregoing. *See Natl. Rifle Assn. of Am.*, 2020 WL 13678741, at *14 (reducing fees-on-fees request by 80% in part because "Plaintiffs' inadequate documentation and explanations for their extraordinarily large fee request required the Court to expend substantial resources to determine the reasonableness of the fee request.").

To summarize, Relator submitted 1,360 separate billing entries in his supplement to the Fees Petition, representing 2,107 hours and $1,594,425 in attorney fees. *See* Appendix, Ex. 18, Supplemental Fees (under seal). The Court has interlineated these fees into the Fees Petition Spreadsheet, demarcated a reduction code "S" to all supplemental fees-on-fees, and applied a 65% compensable rate. *See id.* This yields a total addition of 1,369 hours and $1,036,376 in compensable supplemental fees-on-fees. *See id.*

5. Final Lodestar Calculation

The Court will now summarize the determinations made thus far. The original Fees Petition contained 120,217 hours and requested $83,314,898 in attorney fees. Relator's Counsel then withdrew 2,015 hours and $1,908,850 in fees associated with the Formosa settlement. The starting point of the lodestar calculation was therefore 118,202 hours and $81,406,049 in attorney fees. After applying the court-approved reasonable hourly rates, the lodestar was calculated as $70,928,073, still reflecting 118,202 hours. After adopting most of the Special Master's Fees R&R and making some *de novo* findings, the non-block-billed fees were reduced by 23%, resulting in a total reduction to the lodestar of 9,912 hours and $5,787,451 in fees. With respect to the block-billed entries, 299 hours and $265,401 were withdrawn by Relator and 20 hours and $17,928 were omitted as misbilled. Thereafter, the Court applied a 33% reduction to the remaining block-billed fees. This resulted in a reduction to the lodestar of 24,328 hours and $15,067,684. The Court then approved 65% of Relator's supplemental fees-on-fees, adding an additional 1,369 hours and $1,036,376 to the lodestar. The final lodestar in this case is therefore $50,825,985, representing 85,012 hours the Court deems reasonably expended on this nearly two-decades old litigation. *See* Appendix, Ex. 1, Fees Petition Spreadsheet without Narratives; Appendix, Ex. 4, Fees Petition

(52 of 78), Page 52 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 52 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 51 of 73   Page
ID #:161885

Spreadsheet with Narratives (under seal).

**Table Six**
*Final Lodestar Calculation*

|  | **Hours** | **Fees** |
|---|---|---|
| Fees Petition as Submitted | 118,202 | $81,406,049 |
| Fees Petition Calculated Using Court-Approved Reasonable Hourly Rates | 118,202 | $70,928,073 |
| Reduction for Unreasonable Non-Block-Billed Time | -9,912 | -$5,787,451 |
| Tentative Lodestar Calculation | 108,290 | $65,140,622 |
| Withdrawn Block-Billed Time | -299 | -$265,401 |
| Omitted Misbilled Block-Billed Time | -20 | -$17,928 |
| 33% Reduction to Remaining Block-billed Time | -24,328 | -$15,067,684 |
| Tentative Lodestar Calculation | 83,643 | $49,789,609 |
| Addition of Supplemental Fees on Fees | +1,369 | +$1,036,376 |
| Lodestar | 85,012 | $50,825,985 |

**C. Adjustment to the Lodestar**

J-M next argues that the lodestar should be reduced by 95% because Relator and the Exemplar Plaintiffs achieved only minimal success in this litigation. The premise for J-M's argument is that the Exemplar Plaintiffs recovered only "$162,000 in penalties and no damages – representing only a tiny fraction of the more than $191 million they sought at the Phase 2 trial." J-M Stage Three Op. Br. at 5. Relator does not request an upward adjustment but argues that any reduction to the lodestar would be unwarranted because caselaw clearly commands that the lodestar is presumed reasonable. Even so, Relator argues that J-M's asserted proportionality principle, aside from it being legally erroneous, nonetheless fails because the success here is substantial. Relator justifies the substantial success in this case by highlighting the following

(53 of 78), Page 53 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 53 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 52 of 73   Page
ID #:161886

results: (1) the $22.5 million Formosa settlement; (2) the $162,000 in civil penalties recovered from J-M; (3) that J-M began offering a fifty-year warranty on it pipe; (4) the vindication of the FCA's important goals; and (5) the exposure and cessation of a decades-long fraud. *See* Relator Stage Three Op. Br. at 8-16.

The Court will begin by making two threshold observations. First, it is worth recounting here the totality of J-M's proposals in this fee litigation. In total, J-M has insisted that: (1) the Special Master should have reduced the non-block billed fees by no less than 55%; (2) the Court should reduce the block-billed entries by 100%; (3) the lodestar should then be reduced by 95% for limited success; and finally (4) the total amount should be offset by 100% of the Formosa Settlement. The result? Without even considering the impact of J-M's arguments regarding hourly rates or costs, this would result in a negative fee award of $4,939,230 – ostensibly meaning J-M would be liable for *no* attorney fees at all or even that Relator would owe J-M from the Formosa offset. Though the Court does not feel particularly compelled to offer much reasoning here, J-M's suggestion that Relator's Counsel should be awarded nothing for convincing a unanimous jury after an exhaustive seven-week trial that J-M was liable for submitting false claims and successfully defending that jury verdict in a published appellate decision is preposterous. It is also unserious. And it is rejected.

Second, as this Court has long said and feels compelled to repeat today, there is no debate that the outcome of this case was decidedly mixed. This was a protracted, fiercely litigated, technologically complex case. Proving the liability component of this case was a tremendous undertaking, and that verdict was affirmed. But in the end, the Exemplar Plaintiffs failed to establish evidence sufficient to find actual damages. So, while abstractly the case has achieved a great deal, numerically it came nowhere close to its secondary goal.

Turning to the law, Relator correctly states that the starting point here "is a strong presumption that the lodestar figure is reasonable." *Perdue*, 559 U.S. at 554. But "[t]he lodestar method was never intended to be conclusive in all circumstances" and the "presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Id*. J-M correctly cites *Hensley* as the foundational case in how to analyze this final step of the lodestar calculation.

As the Ninth Circuit has put it, "[u]nder *Hensley*, the reasonableness of a fee award is determined by answering two questions." *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th

51

(54 of 78), Page 54 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 54 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 53 of 73    Page
ID #:161887

Cir. 2009). At the first step, the Court must ask: "'did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?'" *Id.* (quoting *Hensley*, 461 U.S. at 434). Here, there is no debate that the Exemplar Plaintiffs prevailed on each of their claims. The Phase One jury found J-M liable on each of the Exemplar Plaintiffs' claims. And the Court ultimately awarded in Phase Two a civil penalty for each project at issue in the Exemplar Plaintiffs' claims.[29] Though the Exemplar Plaintiffs were ultimately unsuccessful at proving actual damages, that is already accounted for in the lodestar calculation by: (1) the fact that the Court has determined Relator to be the prevailing party only for purposes of securing and defending the Phase One liability verdict and the Phase Two civil penalties; and (2) the fact that Relator has excluded from the Fees Petition all the fees and costs from the Phase Two trial except for those necessary to secure the civil penalties. Put another way, the lodestar in this case only includes the fees incurred for the portion of this litigation for which Relator prevailed.

At the second step, the Court must ask: "'did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *Id.* (quoting *Hensley*, 461 U.S. at 434*); see also Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) ("The Supreme Court teaches that the degree of success obtained is the most critical factor in determining the reasonableness of a fee award." (quotations omitted)). At this step, the Ninth Circuit has made clear that attorney fees "must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown*, 565 F.3d at 1103. The Supreme Court and the Ninth Circuit disavow any test of strict proportionality but require some comparison of the damages awarded to the damages sought. *Id.* at 1104. Therefore, "the district court must consider the excellence of the overall result, not merely the amount of damages won." *Id.* But the damages comparison is still the primary consideration. *Id.*

Here, the Court finds once more that what Relator and the Exemplar Plaintiffs accomplished in this case was substantial. If there is a false claims case with such an obvious lack of quantifiable actual damages and only a minimal public value, it certainly is not this one. The case involved a highly technological and complex workings of interconnected consensus science standards, material components of PVC pipe, relative testing mechanics and their concomitant

---

[29] Though, as noted, the Court rejected the Exemplar Plaintiffs' argument that a civil penalty was owed for each stick of pipe.

(55 of 78), Page 55 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 55 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 54 of 73    Page
ID #:161888

functional predicates. Despite all of this, as to liability the Exemplar Plaintiffs convinced a unanimous jury that J-M was liable for knowingly submitting fraudulent claims to the relevant governments that its PVC pipe met applicable industry standards when they, in fact, did not. But at its core, what the case was really about was safe potable water. Certainly, when turning on a faucet, few people think about the critical infrastructure buried beneath the ground that delivers water, let alone the standards that govern the safety and reliability of those systems. While quantifying the public value of exposing these fraudulent claims may be difficult or impossible, recognizing the immense public value is easy.

Additionally, the Exemplar Plaintiffs successfully defended that verdict in a published Ninth Circuit opinion. And while the Court ultimately found that the Exemplar Plaintiffs failed to establish actual damages, they were successful in obtaining $162,000 in civil penalties, which are expressly provided for in the state FCA statutes. Further still, the Plaintiff's success in this litigation secured a sizable $22.5 million settlement from Formosa. *See Bravo*, 810 F.3d at 666 (holding that a district court "may, within the exercise of its discretion, consider the damages portion of a settlement payment by other defendants in evaluating a plaintiff's degree of success"). As noted earlier, the claims against Formosa and J-M were always intertwined, though the primary focus was always on J-M. The strength of Plaintiffs' case was such that Formosa found it prudent to execute a sizable settlement, and that success is properly considered here. And to be sure, the Phase One verdict and civil penalties awarded in Phase Two together accomplish the FCA's goals by exposing false claims against the applicable governments and recovering statutory penalties.

Though this success was substantial, it was only so as to the question of liability; as to both actual damages and civil penalties the Relator/Exemplar Plaintiffs totally failed as to the former category and only prevailed on a minor portion of their civil penalties claim. Despite claiming nearly $1 billion was at stake in the case, when the dust settled, as to J-M they recovered just $162,000. By any measure, then, the extent of Relator/Exemplar Plaintiffs' success clearly fell far short of one of their major goals.

In this regard, J-M's insistence that it is not making a strict proportionality argument is an apophasis – despite denying it, all the roads it paves lead to that result. The lodestar figure only seems unreasonable when compared against the civil penalty award, as J-M frequently repeats. It is easy to make the argument that a $50 million lodestar appears unreasonable when compared to a $162,000 recovery. Agreed. But it is much harder to attack the reasonableness of a $50 million

(56 of 78), Page 56 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 56 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 55 of 73   Page
ID #:161889

lodestar when considering the overall relief that this litigation (which has lasted almost two decades) has so far provided, namely $22,662,000 million in total monetary recovery and the public benefit achieved by vindicating the FCA's goals.[30]

The Court will therefore not engage in rote arithmetic by comparing what was ultimately recovered in civil penalties to what the Exemplar Plaintiffs thought was at stake in the Phase Two trial.   But the Court finds, after careful consideration of all the foregoing and its close understanding of this protracted, complex case that it would be unreasonable to grant Relator's attorney fees in full.  Just as J-M's argument for an extreme 95% reduction is wholly without merit, so, too, is Relator's refusal to acknowledge his limited success.   The Court finds that a 20% reduction to lodestar is appropriate here, representing the fact that, although the Exemplar Plaintiffs succeeded on all of their claims, the Phase One liability verdict for which fees are now being shifted ultimately resulted in Relator obtaining limited success at the Phase Two trial.

This finding is also informed by the cases the parties cite and the policy considerations on both sides.  Relator aptly cites other district court cases refusing to reduce the lodestar for limited success because doing so could disincentive skilled lawyers from taking on difficult FCA cases, which would thwart the public policy goals of exposing false claims made upon the government. For example, in *United States v. CDW-Government, Inc.*, the district court determined that:

> The sizable lodestar amount recommended here is consistent with the Congressional intent of the 1986 amendments to the False Claims Act.  Liotine, in partnership with the federal government, has achieved a substantial result that resulted in recovery for the United States.  This type of recovery is rare.  Congress mandated fee-shifting in False Claims Act cases.  The size of the lodestar amount recommended here should serve to (1) encourage other highly-skilled professionals to engage in False Claims Act litigation and (2) have a deterrent effect on persons or corporations intending to engage in fraud against the federal government.

No. 3:05-cv-00033-DRH-PMF, 2013 WL 11267176, at *13 (S.D. Ill. May 17, 2013) (citations omitted) (citing statistics showing that recovery for the United States occurs in 9% or less of all non-intervened FCA cases).  Similarly, another district court cited by Relator declined to reduce

---

[30] It is recognized that that the $22,662,000 consists of the $22,500,000 Formosa settlement (but not including the $5,500,000 attorney fees portion of it) and the $162,000 civil penalties awarded (which was much less than the millions of dollars in civil penalties which the Relator/Exemplar Plaintiffs had sought at the Phase Two trial).  Thus, one could make the argument that the $22,662,000 figure should not be applied as to J-M since the vast majority of that amount is attributed only to Formosa's settlement and not to any actual J-M loss.

(57 of 78), Page 57 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 57 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 56 of 73    Page
ID #:161890

an attorney fees award based on the amount of recovery "to avoid undercutting the FCA's goals," recognizing the congressional intent of the FCA statute, and determining that "[i]f a court were to substantially reduce a relator's attorneys' fees because the government settles for less than the amount expected by the relator, it may have a cooling effect and discourage relators or attorneys from investing in bringing *qui tam* actions thus undermining the purpose of the FAC." *United States ex rel. Shepard v. Grand Junction Regl. Airport Auth.*, No. 13-cv-00736-CMA-CBS, 2017 WL 11556405, at *3 (D. Colo. July 24, 2017). With this authority in mind, the Court notes, too, that there is clear congressional intent behind the 1986 amendments to the federal FCA:

> The purpose of S. 1562, the False Claims Reform Act, is to enhance the Government's ability to recover losses sustained as a result of fraud against the Government. While it may be difficult to estimate the exact magnitude of fraud in Federal programs and procurement, the recent proliferation of cases among some of the largest Government contractors indicates that the problem is severe. This growing pervasiveness of fraud necessitates modernization of the Government's primary litigative tool for combatting fraud; the False Claims Act (31 U.S.C. 3729, 3730). The main portions of the act have not been amended in any substantial respect since signed into law in 1863. In order to make the statute a more useful tool against fraud in modern times, the Committee believes the statute should be amended in several significant respects.

> The proposed legislation seeks not only to provide the Government's law enforcers with more effective tools, but to encourage any individual knowing of Government fraud to bring that information forward. In the face of sophisticated and widespread fraud, the Committee believes only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds. S. 1562 increases incentives, financial and otherwise, for private individuals to bring suits on behalf of the Government.

S. Rep. 99-345, at 1-2 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5266-67. All of this is to say that the Court credits Relator's cited authority and the serious policy considerations at stake in reducing an FCA case lodestar for limited success.

Conversely, however, J-M's reliance on *Farrar v. Hobby*, 506 U.S. 103 (1992) is instructive on the topic of determining reasonableness based in part on the degree of success obtained, though it is not of much help on the facts. In *Farrar*, the Supreme Court affirmed the denial of an attorney fees award where plaintiffs recovered only nominal damages of one dollar on a claim for $17 million. 506 U.S. at 114. The Supreme Court observed that the "litigation

(58 of 78), Page 58 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 58 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 57 of 73   Page
ID #:161891

accomplished little beyond giving petitioners the moral satisfaction of knowing that a federal court concluded that their rights had been violated in some unspecified way." *Id*. Here, the Exemplar Plaintiffs did not just technically prevail; they actually prevailed on liability as to each of their claims. As noted earlier, the FCA statutes provide for relief in the form of actual damages or civil penalties, which the Plaintiffs obtained. However, as noted *supra* at footnote 30, there is a question as to whether the total relief of this case should be monetarily valued at $22,662,000 (nowhere near a nominal amount) or at $162,000 which is the only amount of damages which J-M is currently obligated to pay but also is nowhere near a nominal amount.

J-M acknowledged at the hearing, however, that civil penalties under the FCA are intended purposes of the statute, not technical or nominal victories, nor has it cited any authority to that end. *See* Transcript of March 3, 2025 Hearing, Docket No. 3291, at 23:8-12. In any event, this argument would presumably disincentivize attorneys from taking FCA cases where damages might be difficult to prove. But no doubt, *Farrar* and its citation to *Hensley* makes clear that this Court must consider the extent of Relator's success. *Id*. at 116 (citing *Hensley*, 461 U.S. at 438).

J-M's citation to *United States v. Everglades College, Inc.*, 855 F.3d 1279 (11th Cir. 2017) is also helpful. In *Everglades*, the Eleventh Circuit affirmed a district court's discretion in reducing the lodestar in a false claims case by more than 95%. 855 F.3d at 1293. The Eleventh Circuit held that this reduction was within the district court's discretion because it did not perform a strict mathematical calculation but instead considered all the policy considerations, costs incurred, and public benefit. *Id*. In the underlying case, the relator sought over $1 million in attorney fees and almost $76,000 in costs, which the court reduced to $60,000 in attorney fees and $27,000 in costs. *Id*. at 1285. This was after the Court found the government suffered no financial damages at all and awarded one statutory penalty for each of two false claims, totaling $11,000. *Id*. at 1284. The United States then intervened while relator appealed and settled the case for $335,000 – more than thirty times the amount recovered by relator at trial – to which the relator objected. *Id*. at 1284.

Though some of the facts of *Everglades* are certainly applicable here, others are clearly distinguishable. Aside from the obvious fact the case is not binding upon this Court, the relator in that case actually *opposed* the government's settlement, meaning the only relevant relief to be considered was the $11,000 recovered in statutory penalties. Like this case, however, the settlement was similarly and significantly much larger than the penalties recovered at trial. By contrast, Relator here did not oppose a settlement – but actually helped effectuate a $22.5 million

(59 of 78), Page 59 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 59 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 58 of 73    Page
ID #:161892

settlement with Formosa. Nonetheless, *Everglades* certainly stands for the proposition that a court cannot reduce the lodestar in some "rote" mathematical proportionality test, which this Court also rejects. It also stands for the proposition that a court should consider the policy considerations on both sides, the defense costs, and the positive public value of the outcome, all of which this Court has considered. Most clearly, though, the affirmance of a 95% lodestar reduction in *Everglades* certainly highlights a district court's wide discretion in determining whether a lodestar reduction (if at all) is appropriate based on its close understanding of the case, which this Court does here.

In the end, the Court is persuaded that a 20% reduction is warranted, for all the reasons explained above. This results in a significant $10,165,197 reduction to the lodestar. *See* Appendix, Ex. 1, Fees Petition Spreadsheet without Narratives; Ex. 4, Fees Petition Spreadsheet with Narratives (under seal). The resulting attorney fee award is therefore $40,660,787. *See id.* The Court is confident that this adjustment to the lodestar strikes an equitable balance between recognizing the substantial victory the Exemplar Plaintiffs achieved on liability, the important public interest obtained by advancing the intent and purpose of the FCA statutes, that many of the relevant considerations here are already subsumed into the lodestar, and the inescapable reality that the Exemplar Plaintiffs obtained only limited success after a decades-long, costly, contentious litigation. Nor could any argument be made that this reduction will serve to discourage skilled lawyers from taking on complex false claims act cases, as the resulting fee award still exceeds $40 million.

**Table Seven**
*Fee Award After Applying Lodestar Adjustment*

|  | **Hours** | **Fees** |
|---|---|---|
| Fees Petition as Submitted | 118,202 | $81,406,049 |
| Fees Petition Calculated Using Court-Approved Reasonable Hourly Rates | 118,202 | $70,928,073 |
| Reduction for Unreasonable Non-Block-Billed Time | -9,912 | -$5,787,451 |
| Tentative Lodestar Calculation | 108,290 | $65,140,622 |
| Withdrawn Block-Billed Time | -299 | -$265,401 |

| Omitted Misbilled Block-Billed Time | -20 | -$17,928 |
|---|---|---|
| 33% Reduction to Remaining Block-billed Time | -24,328 | -$15,067,684 |
| Tentative Lodestar Calculation | 83,643 | $49,789,609 |
| Addition of Supplemental Fees on Fees | +1,369 | +$1,036,376 |
| Lodestar | 85,012 | $50,825,985 |
| 20% Adjustment for Limited Success | -17,003 | -$10,165,197 |
| Fee Award Before Offset | 67,757 | $40,660,788 |

### D. Formosa Settlement Offset

Both Relator and J-M object to the Special Master's report and recommendation with respect to the Formosa Settlement. When the Court appointed the Special Master, it specifically delegated to him the authority to determine legal and factual issues concerning the settlement between Plaintiffs and co-defendant Formosa:

> *Issues with the Formosa Plastics Settlement*: The Special Master shall address the legal and factual issues concerning the fact that, days before the start of the Phase One trial, the Plaintiffs and co-defendant Formosa Plastics Corporation executed a settlement agreement under which Formosa agreed to pay $22.5 million to compromise and settle the claims Plaintiffs alleged against it, as well as an additional $5.5 million in attorney fees and costs. *See* Settlement Agreement, Declaration of Richard T. Williams, Docket No. 1744-1, at 5.

Appointment Order at 6.

### 1. The Special Master's Report & Recommendation

The Special Master reported that the parties agree that under applicable law J-M is entitled to some amount of offset from the Formosa settlement. Before the Special Master, Relator argued that he incurred $4.9 million in fees directly attributable to litigating against Formosa, which were foresworn in the Fees Petition, leaving a potential offset of just under $600,000. Fees R&R at 42-43. The Special Master found three "considerable problems" with Relator's factual presentation. First, the Special Master found that Relator did not carry his burden of demonstrating the details of the legal fees he attributes to Formosa. *Id*. at 43-44. Second, the Special Master found that he

(61 of 78), Page 61 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 61 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 60 of 73    Page
ID #:161894

had lingering doubts as to Relator's billing accuracy in this regard because the Fees Petition Spreadsheet he reviewed did in fact contain Formosa-related billing. *Id*. at 44. Third, the Special Master found that Relator's calculations cannot possibly be correct because it was based on the hourly rates submitted in the Fees Petition, not the reasonable rates the Court ultimately approved. *Id*. at 45.

In the end, however, the Special Master did not reject the sworn declarations from Relator's Counsel attesting that Relator incurred significant fees litigating against Formosa, evidenced by the fact that work known to be done in in the litigation against Formosa was not included in the Fees Petition. In light of all these considerations, the Special Master recommended that J-M receive an offset of $2.5 million. The Special Master found that this significant but not full offset strikes a fair balance between J-M receiving a meaningful credit without offsetting the full amount, which would not be appropriate because Relator demonstrated enough about Formosa-related work. Fees R&R at 45-46.

### 2. Standard of Review

As with the recommendation concerning the non-block-billed fees, the Court gave both parties the opportunity to file objections to the Special Master's Formosa-related recommendation and an opportunity to be heard at a hearing. *See* Fed. R. Civ. P. 53(f)(1). The parties included their objections to the Formosa settlement offset recommendation in their Stage Two briefing. *See* Relator Stage Two Op. Br.; J-M Stage Two Op. Br.; Relator Stage Two Resp. Br.; J-M Stage Two Resp. Br. The Court reviewed the Special Master's Formosa-related recommendation in its entirety and carefully considered the parties briefing. The Court will review the parties' objections under the same *de novo* standard of review delineated *supra* in Part II.B.2.a.

### 3. Objections to the Special Master's Report & Recommendation

Unsurprisingly, Relator argues that the Special Master's recommended offset is too high, and J-M argues it is too low. Relator argues that the Special Master overlooked the Formosa-related fees withdrawn from the Fees Petition in 2024, totaling $1,709,015 when calculated using the court-approved reasonable rates. Relator's Counsel now proposes that the Court completely recalculate the Formosa offset by: (1) counting all the Formosa-related fees Relator withdrew in July and August 2024; (2) counting the $205,900 worth of fees the Special Master zeroed out as relating to Formosa work; (3) withdrawing an additional $141,915 in non-block-billed fees Relator now identifies as relating to Formosa work; and (4) withdrawing an additional $1,958,154 in

(62 of 78), Page 62 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 62 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 61 of 73    Page
ID #:161895

block-billed fees Relator newly identifies as relating to Formosa work.  This equates to $4,014,983, leaving a maximum offset of $1,485,017.

J-M argues that the Special Master improperly credited Relator with $3 million by improperly assuming that the absence of non-block-billed Formosa-related entries demonstrated Relator's claim that Formosa-related time was removed.  J-M also takes issue with the fact that the Special Master zeroed out certain Formosa-related non-block-billed time without conducting any reasonableness review of those entries, nor did the Special Master do a reasonableness review of the Formosa-related block-billed entries or the time Relator did actually omit.  Therefore, J-M argues, counting the face value of these entries towards the offset calculation unfairly favors Relator because the time would have otherwise been reduced for unreasonableness.  J-M strongly objects to the Court recalculating the Formosa offset now, as Relator proposes, because Relator failed to carry his burden before the Special Master and cannot upend the record on review.  J-M Open Br. at 19-20; J-M Resp. Br. at 7-10.

On its independent review, the Court largely agrees with both J-M and the Special Master that Relator, despite having ample opportunity to present evidence to the Special Master as to the fees incurred litigating against Formosa, failed to carry his evidentiary burden substantiating such fees.  All Relator had to do here was submit evidence to the Special Master showing the fees that were (or should have been removed) because they related to Formosa work.  That Relator failed to do so in the process the Court set forth cannot justify starting anew at this juncture.  Now, Relator identifies $141,915 worth of Formosa-related non-block-billed time and $1,958,154 worth of block-billed time that he claims should be withdrawn from the Fees Petition and counted toward the Formosa offset.

Relator's late-made proposal presents a litany of problems.  First, it would require wholesale recalculations of the block-billed and non-block-billed reasonableness assessments that the parties, the Court, and the Special Master have all painstakingly undertaken.  Second, doing so could actually benefit Relator unfairly because, as J-M aptly notes, withdrawing these entries entirely does not consider any reasonableness assessment that might discount or otherwise reject those entries for other reasons.  Indeed, some of the non-block-billed entries Relator now seeks to exclude and count toward the offset were in fact found by the Special Master to be not compensable for other reasons.  *Compare, e.g.*, Special Master Spreadsheet (excluding unique ID #MS-000074 and #MS-000309) *with* Declaration of Elizabeth Sher, Docket No. 3228 (manually filed), Ex. B-2

(63 of 78), Page 63 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 63 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 62 of 73    Page
ID #:161896

(identifying unique ID #MS-000074 and #MS-000309 as among the non-block-billed entries to now be withdrawn and counted in the Formosa offset). Finally, the Relator has at all times been in control of this Fees Petition and has had months, if not years, to compile data that would substantiate the value of the legal services incurred litigating against Formosa. In fact, Relator's Counsel submitted declarations attesting that all work related to the Formosa-related settlement had been removed, but the Special Master zeroed out entries directly related to the good faith settlement approval motion. *See* Docket No. 3088. That is just to say that the Court will not accept at this final stage a complete reworking of the record established before the Special Master.

For the same reasons, the Court also rejects J-M's contention that the settlement figure must be adjusted to present-value. In any event, J-M cites no authority for this request and cannot be permitted to take the inconsistent positions that its offset should be adjusted for the time value of money but not Relator's Counsel's hourly rates and costs. Nor does a time-value-of-money argument make much sense here, as J-M has not been deprived of use of settlement money Formosa paid Relator years ago.

For these reasons, the Court agrees with the Special Master and finds that Relator has not fully carried his burden on this issue. With respect to valuing the excluded time with the reasonable hourly rates (not those Relator submitted), the Court appreciates that the sequencing of briefing on this issue was such that Relator could not submit his opening brief with the court-approved reasonable hourly rates. As such, the Court will make some *de novo* findings that will add precision to the calculation. First, the Court accepts Ms. Sher's declaration recalculating the time that was removed in 2024 to the reasonable hourly rates. This time had been removed from the Fees Petition Spreadsheet before the Special Master received it, and when calculated using the court-approved reasonable rates, substantiates $1,709,015 in Formosa-related fees. In addition, the Court accepts Relator's argument that the $205,900 in non-block-billed time removed by the Special Master cannot be zeroed out from the Fees Petition without being calculated into the offset. As such, the Court expressly finds that Relator has carried his burden in establishing $1,914,914 ($1,709,015 + $205,900) in Formosa-related fees for purposes of calculating an offset. Therefore, the maximum offset J-M would be entitled to is $3,585,085. With respect to the Special Master exercising discretion and recommending a smaller offset than what Relator has actually demonstrated, the Court agrees with and accepts the Special Master's findings that the sworn declarations of Relator's Counsel are not to be entirely disbelieved and that the lack of precision

(64 of 78), Page 64 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 64 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 63 of 73    Page
ID #:161897

in Relator's calculation is not insurmountable based on the evidence before us. The Court would have reached the same conclusion.

The Court also agrees with the Special Master's legal conclusions. First, the Special Master correctly determined that "a district court abuses its discretion when it refuses to offset an award of attorney fees by a settling defendant's payment of those same fees." *Bravo*, 810 F.3d at 668. That is because Ninth Circuit law requires that a "non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants." *Corder v. Brown*, 25 F.3d 833, 840 (9th Cir. 1994). Here, the Special Master correctly accepted J-M's well-presented arguments that it should receive some offset of attorney fees to the extent Relator carries his burden. Second, the Special Master correctly determined that there is discretion when determining the allocation of attorney fees among defendants because "district courts should make every effort to achieve the most fair and sensible solution that is possible." *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 960 (1st Cir. 1984).

For all of these reasons, the Court finds that the Special Master's recommendation is well-reasoned and premised upon correct findings of fact and law. However, on independent review, the Court would draw the line somewhat differently. Though the sworn declarations of Relator's Counsel are not to be discredited, in the end Relator has only established $1,914,914 in Formosa-related fees. The Court therefore finds that a $3,000,000 offset is fair and just in this case.

### 4. Summary

The Court therefore **OVERRULES** Relator's objection and **SUSTAINS** J-M's objection with respect to the Formosa Settlement. The Court adopts the Special Master's Fees R&R as its ruling with respect to the Formosa Settlement, except for the modification that the offset amount be $3,000,000.

**Table Eight**
*Final Fee Award*

|  | Hours | Fees |
|---|---|---|
| Fees Petition as Submitted | 118,202 | $81,406,049 |
| Fees Petition Calculated Using Court-Approved Reasonable Hourly Rates | 118,202 | $70,928,073 |

(65 of 78), Page 65 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 65 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 64 of 73   Page
ID #:161898

| | | |
|---|---|---|
| Reduction for Unreasonable Non-Block-Billed Time | -9,912 | -$5,787,451 |
| Tentative Lodestar Calculation | 108,290 | $65,140,622 |
| Withdrawn Block-Billed Time | -299 | -$265,401 |
| Omitted Misbilled Block-Billed Time | -20 | -$17,928 |
| 33% Reduction to Remaining Block-billed Time | -24,328 | -$15,067,684 |
| Tentative Lodestar Calculation | 83,643 | $49,789,609 |
| Addition of Supplemental Fees on Fees | +1,369 | +$1,036,376 |
| Lodestar | 85,012 | $50,825,985 |
| 20% Adjustment for Limited Success | -17,003 | -$10,165,197 |
| Fee Award Before Offset | 67,757 | $40,660,788 |
| Formosa Settlement Offset | - | -$3,000,000 |
| Final Fee Award | 67,757 | $37,660,788 |

### E. Costs

#### 1. The Special Master's Report & Recommendation

On February 7, 2025, the Special Master delivered a 35-page report and recommendation concerning Relator's claimed costs. *See* Costs R&R. The Costs R&R comprehensively summarizes the Special Mater's findings in each of the thirteen categories of costs Relator defined in the Fees Petition and the Fees Petition Spreadsheet. The Special Master also delivered a spreadsheet that: (1) notates, where applicable, a code explaining the reason for a reduction of the claimed cost; (2) defines a percentage for which each cost entry is determined to be compensable; and (3) does the math, applying the percentage to each billing entry and totaling the results. *See* Appendix, Ex. 6, Special Master Costs Spreadsheet (under seal).

Recall that the Fees Petition contained 19,035 separate cost entries totaling $3,914,356 in total claimed costs. The Special Master confirmed that he reviewed *each* of these entries. The Special Master concluded that Relator "failed to demonstrate the reasonableness of a significant

(66 of 78), Page 66 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 66 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 65 of 73   Page
ID #:161899

portion of the requested costs." Costs R&R at 1. The Special Master found that Relator's costs submissions largely failed to comply with settled law regarding cost recovery. *Id*. Specifically, the Special Master found that Relator's "delays in producing basic evidence of the costs" and "failure to explain the litigation significance of these expenses" prevented him from concluding that a reasonable client would pay for the costs. *Id*. The Special Master noted that Relator filed a massive spreadsheet that recorded the law firms' expenses and declarations from the lead lawyers attesting to the reasonableness of the costs. *Id*. at 6-7. However, Relator did not file any receipts or other backup documentation with the Court or directly with the Special Master. *Id*. On this topic, the Special Master noted that Relator produced to J-M receipts and invoices for a majority of the expenses between November 2024 and January 2025, some of which was still being exchanged right up until the cost-related briefing was due before the Special Master. *Id*. at 6.

With respect to Relator's spreadsheet, the Special Master noted that the "data entries varied wildly in explaining the costs incurred." Some entries, the Special Master observed "clearly specified the recipient of the payment, and meaningfully identified the purpose/basis of the expense." *Id*. But many others "did not provide any insight for the bills at all." *Id*. Overall, the Special Master found that "Relator's submissions regarding costs were (a) disappointing and (b) unfair to the defense, the Court, and me." *Id*. at 7. Specifically, the Special Master concluded that "the gist of the Relator's presentation" was "an unilluminating spreadsheet, generalized and conclusory declarations" and a "last minute spewing of backup materials." *Id*. The Special Master concluded that this was not convincing and provided him, the Court, and any appellate court reviewing this matter no meaningful record to assess Relator's claimed costs. *Id*. The Special Master also found troubling that Relator hesitated to produce any evidentiary backup for these costs until late in 2024 and right up until the briefing on this matter, as the "spirit of Rules 16 and 54 suggests that this material should've been provided long ago to allow for orderly consideration of the cost request." *Id*. at 7-8.

Despite all this, the Special Master proceeded to review each of the submitted cost entries and stated that he "was able to understand and evaluate a sizeable amount of what the Relator views as compensable and shiftable litigation expenses." *Id*. at 1. In the end, the Special Master recommended that the Court order J-M to pay $1.86 million in costs contained in the original petition. If the Court applies an interest component, a hotly contested issue before the Special Master that Relator raised late into the briefing, the recommendation equates to approximately

(67 of 78), Page 67 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 67 of 78
Case 5:06-cv-00055-GW-MAR   Document 3310   Filed 03/13/25   Page 66 of 73   Page
ID #:161900

$3.3 million. *Id.* Once again, the Court is grateful for the Special Master's thorough and careful report, and his clearly presented recommendation.

### 2. Standard of Review

As with the Fees R&R, the Court gave both parties the opportunity to file objections to the Special Master's Cost R&R and an opportunity to be heard at a hearing. *See* Fed. R. Civ. P. 53(f)(1). The parties filed simultaneous opening and responsive briefs with numerous objections to nearly every aspect of the R&R. *See* Relator Costs Op. Br.; J-M Costs Op. Br.; Relator Costs Resp. Br.; J-M Costs Resp. Br. The Court reviewed the Costs R&R in its entirety and carefully considered the parties briefing. The Court will review the parties' objections to the Cost R&R under the same *de novo* standard of review delineated *supra* in Part II.B.2.a.

### 3. Burden of Production & Persuasion

J-M raises a facial objection to the Costs R&R on the basis that Relator has failed to meet his burden of production and persuasion, which completely undermined the Special Master's ability to meaningfully assess the reasonableness of Relator's claimed costs. J-M commends the Special Master's work in forging ahead to conduct his own analysis of Relator's claimed costs despite Relator's failure to carry his burdens, but even so, J-M argues that the Special Master lacked the necessary information, backup, and context to make informed reasonableness determinations. In short, "J-M does not dispute that the R&R's recommended discounts represent the informed judgment of an experienced and qualified Special Master" but in the end the Special Master "was unable to consider reasonableness holistically and determine what costs were incurred for work that was actually necessary." J-M therefore requests that the Court deny Relator's costs requests in full. *See* J-M Costs Op. Br. at 5-7.

For his part, Relator argues that the Special Master failed to properly defer to Relator's Counsel's judgment that costs were reasonably incurred, again relying on *Moreno*. With respect to the burden of production, Relator points out that the Special Master explicitly concluded that he was able to understand and evaluate a sizable amount of Relator's claimed costs. Relator contends that J-M's proposed requirement that each of the 19,000 cost items must be given a detailed purpose to the outcome of the litigation is not required under the law and "would present an unreasonable and prohibitively expensive burden in a case of this length and complexity." *See* Relator Costs Resp. Br. at 2-3. Relator then argues that the Special Master grossly over-discounted his requested costs and that he is entitled to interest on costs. *See generally* Relator Costs Op. Br.;

(68 of 78), Page 68 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 68 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 67 of 73    Page
ID #:161901

Relator Costs Resp. Br. 3-5.

The largely Court agrees with J-M on this foundational issue. Under the federal False Claims Act and the applicable state law parallels at issue here, Relator may recover reasonable costs. *See* 31 U.S.C. § 3730(d)(2). Under this cost-shifting statue, both taxable and non-taxable cost may be shifted from Relator to J-M. *See Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). "The prevailing party has the burden of establishing what expenses can be taxed and by what amount." *Syneron Med. Ltd. v. Invasix, Inc.*, No. 16-cv-0143-DOC-(KESx), 2019 WL 1878346, at *1 (C.D. Cal. Feb. 7, 2019). Indeed, the Federal Circuit (applying Ninth Circuit law) said in denying inadequately described document production costs: "The burden is on the prevailing party to establish the amount of compensable costs and expenses to which they are entitled. Prevailing parties necessarily assume the risks inherent in a failure to meet that burden." *In re Ricoh Co., Ltd. Pat. Litig.*, 661 F.3d 1361, 1367 (Fed. Cir. 2011) (quotations and brackets omitted).

Here, the Court has independently reviewed the record made before the Special Master, as well as the spreadsheet detailing Relator's costs. To call Relator's Counsel's presentation of its claimed costs a mess would be an understatement. Most fundamentally, Relator did not provide receipts in the Fees Petition or in the briefing before the Special Master.[31] Providing backup documentation, frankly, is a fundamental requirement of basic accounting, let alone cost-shifting litigation. For instance, Local Rule 54-2.1 requires a party applying to tax costs to "state separately and specifically each item of taxable costs claimed" and explicitly requires "sufficient documentation to support the amount and taxability of each item, such as an invoice, receipt, or other record of the expenditure." C.D. Cal. L.R. 54-2.1. And failure to "attach sufficient documentation to support an item will constitute grounds for not taxing that item." *Id*. The same is true in real life. Restaurants provide customers a receipt at the end of a meal. Utility companies provide consumers a bill at the end of the month. Businesses deny employees' expense reports not supported with receipts. While private clients might trust their lawyer and pay certain expenses without backup documentation, no reasonable litigation adversary would agree to pay shifted costs without supporting documentation.

---

[31] Unpromoted, Relator filed several tranches of backup documents with the Court after the February 24, 2025 hearing, which J-M has since moved to strike. As the Court will soon explain, it will not consider this material. As such, the Court **DENIES AS MOOT** J-M's motion to strike this material.

(69 of 78), Page 69 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 69 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 68 of 73    Page
ID #:161902

The Court again finds Relator's reliance on *Moreno* unavailing. *Moreno* does not discuss costs at all and, at best, stands for the proposition that Relator's cost submissions are due some deference. The Court atmospherically agrees with this contention and will award certain costs notwithstanding Relator's failure to carry his burden of production. But *Moreno* does not stand for the broad proposition that J-M should simply pay Relator's Counsel's costs because they attest that they are reasonable. Again, if this was the standard, what would be the purpose of a court's reasonableness review?

In any event, the Court finds that J-M has rebutted much of the deference the Court should give to Relator's cost presentation. After J-M was finally provided backup documentation, it identified that Relator submitted cost entries for a speeding ticket, airline cancellation fees for an Italian vacation planned for the second week of trial, a travel pillow, lost car keys, flowers, and after-hours heating at the Day Pitney law firm office. *See* Costs R&R at 26 n.20. The Court agrees with the Special Master that it is disappointing that Relator "submitted these claims in federal district court as part of a request for adjusted costs." *Id*. And like the Special Master, this makes the Court "question the sincerity and reliability of the Relator's contention that they excluded unrecoverable costs from the petition." *Id*.

Setting these examples aside, the Court finds that the bulk of Relator's claimed costs are simply not reviewable. For example, 3,068 separate costs entries are submitted with nothing more than a description of "American Express" and a few digits of the card number. *See* Appendix, Ex. 19, AMEX Cost Entries (under seal). These entries totaled $434,505 and provide absolutely no description of what cost was incurred or the purpose of the cost for the litigation, let alone the reasonableness of this cost. Furthermore, the largest cost entry in the entire Fees Petition was for $82,796.25, categorized as travel, and described only as "American Express ck 22145." The second largest cost was for $70,689.95, categorized as e-discovery and technology, and described only as "Gateway Acceptance Company ck 15178." The third largest cost entry is just slightly more detailed, a $58,993.50 cost entry, categorized as experts & consultants, and described only as "Courtroom Presentations Inc. ck 22120." The Court understands that some additional detail regarding these costs was fleshed out before the Special Master. But J-M has submitted an expert declaration showing that of the $1,864,197 that was awarded by the Special Master, $1,074,994 or 57.7% of the associated cost entries have no traceable supporting documentation. *See* Declaration of Daniel W. Stone, Docket No. 3258 (manually filed), ¶ 5. And of the costs that the Special

(70 of 78), Page 70 of 78     Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 70 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 69 of 73    Page
ID #:161903

Master awarded in full, $907,277 or 87.3% are associated with cost entries for which no traceable supporting documentation was provided. *Id.* ¶ 6.

Though, as will be seen in just a moment, the Court will not adopt an absolutely strict rule that every single cost item must be supported with documentation, the Court finds that Relator has failed to carry his burden of production and persuasion on costs. Without supporting documentation and a meaningful explanation of not just the cost line-item, but also why the cost was reasonably expended on the litigation, there is simply no basis for J-M, the Special Master, this Court, or any appellate court to truly test and understand the accuracy, let alone the reasonableness, of Relator's claimed costs.

There are three exceptions here. The Court agrees with and accepts the Special Master's recommendations with respect to court reporting services, PACER and court fees, and office services and supplies. The Special Master recommends that the Court award $230,000 in court reporting services (to which neither side objected), $7,100 in PACER and court fees, and $405,000 in office services and supplies, many of which are literally nickel-and-dime copying expenses. The Court has reviewed these items and finds that these amounts are reasonable expenditures in this case. The Court is personally aware of the court reporting services and the exorbitant amount of paper involved in this case, as the Court was there each day with the court reporter and a large portion of this judicial officer's chambers has been dedicated over the years to organizing the copious filings and binders involved in this case. The Court finds the Special Master's analysis well-reasoned in this regard and would have reached similar conclusions on these issues on its own, notwithstanding that Relator otherwise failed to carry his burden of production and persuasion.

The Court sincerely thanks the Special Master for forging ahead and diligently reviewing the entirety of the Relator's cost presentation. On independent review, however, the Court will **SUSTAIN** J-M's objection that Relator failed to meet his burden of production and persuasion, except for the discrete categories of costs just described. With respect to court reporting services, PACER and court fees, and office services and supplies, the Court adopts the Special Master's report and recommendation as its ruling. Finding that Relator has failed to otherwise carry his burden of production and persuasion, the Court is left with only two options: (1) to give Relator an additional attempt at substantiating costs by submitting an amended cost petition and order additional briefing, hearings, and perhaps new work before the Special Master, or (2) to deny

(71 of 78), Page 71 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 71 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 70 of 73    Page
ID #:161904

Relator's other requested costs. At this juncture, the Court is compelled to choose the latter option. Relator was given an extraordinary amount of time to prepare this Fees Petition, and the parties operated under a comprehensive case management order for several months, not to mention that more than half a year was spent addressing preliminary issues before substantive briefing began, during which time the Court would have allowed necessary supplementation. At this point, the Court is seriously concerned that reopening the cost issue would prejudice J-M by undoing the work it has incurred significant cost to perform and further extend this already protracted fees litigation. The Court will therefore award the $642,100 of costs discussed herein and otherwise deny Relator's petition for costs.

### 4. Supplemental Costs

In his supplemental petition, Relator submits an additional 32 cost entries. *See* Fees Supp. Declaration of Elizabeth Sher, Docket No. 3234. Primarily, these supplemental fees are for hourly fees for the Special Master. And this is the only aspect of the supplemental costs to which J-M objects. *See* Fees Supp. Opp. at 14. In its appointment order, the Court decided that the cost of the Special Master would be split equally amongst the parties. *See* Appointment Order. These tentative instructions were distributed to the parties before the Court made its appointment, no party objected, and Relator expressly consented to this appointment. The Court therefore finds that the costs of the Special Master shall not be shifted to J-M. With respect to the remaining costs, the Court has reviewed the supplemental declarations and finds them reasonable. And, importantly, the Court reached this conclusion by looking at the backup documentation provided concomitantly with the declarations. The Court therefore finds that $13,150.31 of Relator's claimed supplemental costs for fees-on-fees are reasonable and compensable.

### 5. Summary

In summary, the Court finds $642,100 of the Relator's claimed costs in the original Fees Petition and $13,150 of Relator's claimed costs in the supplemental fees petition reasonable and compensable under the fee-shifting portions of the relevant FCA statutes.

**Table Nine**
*Final Cost Award*

|  | Costs |
|---|---|
|  |  |

(72 of 78), Page 72 of 78    Case: 25-2499, 08/29/2025, DktEntry: 22.2, Page 72 of 78
Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 71 of 73    Page
ID #:161905

| Costs from Fees Petition | $642,100 |
|---|---|
| Costs from Supplemental Fees Petition | $13,150 |
| Final Cost Award | $655,250 |

## IV.  Conclusion

After considering all of the foregoing, the Court **GRANTS** Relator's Motion for Attorney Fees and Costs and **ORDERS** Defendant J-M Manufacturing Company, Inc. to pay Relator $38,316,038, comprised of $37,660,787 in attorney fees and $655,250 in costs.  The Court's calculation is summarized in the following table and detailed in Appendix, Ex. 1, Fees Petition Spreadsheet without Narratives and Appendix, Ex. 4, Fees Petition Spreadsheet with Narratives (under seal).  J-M shall make payment to Relator within 60-days from the date of this order, or at any other time so stipulated by the parties.

**Table Ten**
*Final Award of Attorney Fees & Costs*

|  | Hours | Fees |
|---|---|---|
| Fees Petition as Submitted | 118,202 | $81,406,049 |
| Fees Petition Calculated Using Court-Approved Reasonable Hourly Rates | 118,202 | $70,928,073 |
| Reduction for Unreasonable Non-Block-Billed Time | -9,912 | -$5,787,451 |
| Tentative Lodestar Calculation | 108,290 | $65,140,622 |
| Withdrawn Block-Billed Time | -299 | -$265,401 |
| Omitted Misbilled Block-Billed Time | -20 | -$17,928 |
| 33% Reduction to Remaining Block-billed Time | -24,328 | -$15,067,684 |
| Tentative Lodestar Calculation | 83,643 | $49,789,609 |
| Addition of Supplemental Fees on Fees | +1,369 | +$1,036,376 |

| Lodestar | 85,012 | $50,825,985 |
|---|---|---|
| 20% Adjustment for Limited Success | -17,003 | -$10,165,197 |
| Fee Award Before Offset | 67,757 | $40,660,788 |
| Formosa Settlement Offset | - | -$3,000,000 |
| Final Fee Award | 67,757 | $37,660,788 |
| Costs from Fees Petition | - | $642,100 |
| Costs from Supplemental Fees Petition | - | $13,150 |
| Total Attorney Fees & Costs | 67,757 | $38,316,038 |

## V.  Appendix

| Ex. | Description |
|---|---|
| 1 | Fees Petition Spreadsheet without Narratives |
| 2 | Special Master R&R on Fees and Formosa Settlement |
| 3 | Special Master R&R on Costs |
| 4 | Fees Petition Spreadsheet with Narratives (under seal) |
| 5 | Special Master Fees Spreadsheet (under seal) |
| 6 | Special Master Costs Spreadsheet (under seal) |
| 7 | Email Submitting Fees Petition Spreadsheet (under seal) |
| 8 | Excessive & Overbilled Entries (under seal) |
| 9 | Administrative Entries (under seal) |
| 10 | Topstaffed Entries (under seal) |
| 11 | Duplicative & Overstaffed Entries (under seal) |
| 12 | Misbilled Time (under seal) |
| 13 | Non-Block-Billed Summary (under seal) |
| 14 | Block-Billed Entries (under seal) |

Case 5:06-cv-00055-GW-MAR    Document 3310    Filed 03/13/25    Page 73 of 73    Page ID #:161907

| 15 | Block-Billing Summary (under seal) |
| 16 | Withdrawn Block-Billed Fees (under seal) |
| 17 | Block-Billing Reduction (under seal) |
| 18 | Supplemental Fees (under seal) |
| 19 | AMEX Cost Entries (under seal) |

**IT IS SO ORDERED.**

JS-6

ELIZABETH J. SHER *(Admitted Pro Hac Vice)*
esher@daypitney.com
DAY PITNEY LLP
1 Jefferson Road
Parsippany, New Jersey  07054
Telephone: (973) 966-6300
Facsimile: (973) 966-1015

**Attorneys for Relator, Commonwealth of Virginia,
Calleguas Municipal Water District, Palmdale Water District,
and South Tahoe Public Utility District
(AND OTHER PARTIES/ATTORNEYS AS LISTED ON THE DOCKET)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES, THE STATES OF CALIFORNIA, DELAWARE, FLORIDA, ILLINOIS, INDIANA, NEVADA, NEW MEXICO, NEW YORK, and TENNESSEE, THE COMMONWEALTHS OF MASSACHUSETTS AND VIRGINIA, and THE DISTRICT OF COLUMBIA ex rel. JOHN HENDRIX, | Case No. EDCV 06-0055-GW-PJWx<br><br>Hon. George H. Wu<br><br>**FINAL JUDGMENT** |
| Plaintiffs, | |
| v. | Date:  October 6, 2021<br>Time:  9:30 a.m.<br>Location:  Courtroom 9D |
| J-M MANUFACTURING COMPANY, INC., d/b/a JM Eagle, a Delaware corporation, and FORMOSA PLASTICS CORPORATION, U.S.A., a Delaware corporation, | |
| Defendants. | |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

WHEREAS, this matter began by way of a qui tam and False Claims Act ("FCA") complaint filed under seal on behalf of the United States of America, the States of California, Delaware, Florida, Nevada, and Tennessee, and the Commonwealths of Massachusetts and Virginia by relator John Hendrix against J-M Manufacturing Company, Inc. ("J-M") and Formosa Plastics Corporation, U.S.A. ("Formosa Plastics") on January 17, 2006 (ECF No. 1); and

WHEREAS, the seal was lifted, and real parties were allowed to intervene as of February 4, 2010; and

WHEREAS, the Court bifurcated the proceeding as to the elements of falsity, materiality, and scienter on the one hand, and damages on the other, on December 7, 2011 (ECF No. 551); and

WHEREAS, the operative Fifth Amended Complaint was filed on December 27, 2011 (ECF No. 568); and

WHEREAS, Calleguas Municipal Water District, the Commonwealth of Virginia for the City of Norfolk, Palmdale Water District, South Tahoe Public Utility District, and the State of Nevada for the City of Reno were designated as "Exemplar Plaintiffs" as of December 22, 2011, for purposes of a Phase One liability trial and also potentially for a Phase Two trial as to "actual damages" and civil penalties under the applicable state FCA statutes (ECF No. 566); and

WHEREAS, the claims of the remaining intervened plaintiffs and real parties in interest were stayed pending entry of final judgment on the Exemplar Plaintiffs' claims; and

WHEREAS, Plaintiffs, Relator John Hendrix, and Formosa Plastics reached a "global settlement" on July 16, 2013 (ECF No. 1742), which was approved by the

- 1 -

Court on January 16, 2014 (ECF Nos. 1839, 1846), and Formosa Plastics was dismissed from this case with prejudice; and

WHEREAS, the Phase One trial on the elements of falsity, materiality, and scienter as they related to Exemplar Plaintiffs' claims took place from September 13, 2013 to November 14, 2013, resulting in a unanimous jury verdict on all claims of the Exemplar Plaintiffs (the "Phase One Verdict"); and

WHEREAS, the Phase Two jury trial on the Exemplar Plaintiffs' actual damages claims took place from October 9, 2018 through November 14, 2018, resulting in a mistrial due to a hung jury, as the jury was unable to agree on any award of actual damages; and

WHEREAS, during the Phase Two trial, the parties agreed that the issue of statutory damages/civil penalties would be tried to the Court; such matter was decided by the Court thereafter (ECF No. 2904); and the Court issued an award as to civil penalties as indicated, *infra*; and

WHEREAS, J-M filed a renewed motion for judgment as a matter of law on December 12, 2018, *inter alia*, as to the issue of actual damages (ECF No. 2809); and the Court granted that motion on June 5, 2020 concluding that "Plaintiffs failed to provide evidence at the Phase Two trial from which a reasonable jury could make a finding of an award of actual damages under the FCA that would not be erroneous as a matter of law, be totally unfounded and/or be purely speculative" (ECF No. 2880);

And good cause appearing therefore;

IT IS HEREBY ADJUDGED AND ORDERED THAT:

(1) Final Judgment is awarded to the Exemplar Plaintiffs (and the Relator John Hendrix, but only insofar as to his involvement with the Exemplar Plaintiffs' claims, if any) against Defendant J-M Manufacturing Company, Inc. based upon the Phase One Verdict and the award of civil penalties, as follows:  $6,000 to Calleguas

- 2 -

Municipal Water District; $48,000 to Palmdale Water District; $78,000 to South Tahoe Public Utilities District; $16,000 to the Commonwealth of Virginia for the City of Norfolk; and $14,000 to the State of Nevada for the City of Reno; and

(2)  This Judgment is deemed final as to the Exemplar Plaintiffs (and the Relator John Hendrix, but only insofar as to his involvement with the Exemplar Plaintiffs' claims, if any) pursuant to Fed. R. Civ. P. 54(b), there being no just reason for delay inasmuch as the Court wishes to have the Ninth Circuit's determinations as to decisions already made in the lawsuit before proceeding to adjudicate the claims of the remainder of the plaintiffs; and

(3)  the Exemplar Plaintiffs' application for attorney's fees and costs related to obtaining and defending the Jury Verdict is hereby stayed and will be due no earlier than 90 days after the Ninth Circuit issues its ruling on any appeal that is taken from this Final Judgment.

IT IS SO ORDERED.

DATE: October 14, 2021

_____
Honorable George H. Wu
UNITED STATES DISTRICT JUDGE

- 3 -

**ER78**